# 98 DTA 164

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL I DE SAN JUAN
### PANEL III

JOAQUIN F. RODRIGUEZ EMMA TRAVIESO
Apelante

v.

HOSPITAL MONTEFLORES, INC., H/N/C, HOSPITAL SAN MARTIN; MARTIN M. RODRIGUEZ EMMA TRAVIESO, SU ESPOSA, MARIA V. RECURT MATIENZO; JOSE D. RIERA RODRIGUEZ, SU ESPOSA MARILYN DEL CARMEN CARRION REXACH, TODOS POR SI Y EN REPRESENTACION DE LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR ELLOS
Apelados

Núm. KLAN-97-001242

San Juan, Puerto Rico, a 14 de abril de 1998

Panel integrado por su Presidenta, la Jueza Ramos Buonomo
y los Jueces González Román y Córdova Arone

Córdova Arone, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Mediante recurso de apelación presentado ante este Foro el 14 de noviembre de 1997, el apelante, Joaquín F. Rodríguez Emma (Dr. J. Rodríguez), solicita que se revoque la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 12 de agosto de 1997. La referida sentencia declaró con lugar la solicitud de sentencia sumaria presentada por los apelados, el Hospital Monteflores, Inc., H/N/C Hospital San Martín y otros (el Hospital) desestimando la demanda en cobro de dinero presentada por el Dr. J. Rodríguez.

Por los fundamentos que pasamos a exponer procedemos a confirmar la sentencia apelada.

### I

De las determinaciones de hechos expuestas por el tribunal apelado se desprende que el Hospital, es una corporación organizada bajo las leyes de Puerto Rico la cual se encuentra en proceso de disolución como resultado de un acuerdo suscrito por sus accionistas unánimemente. Los accionistas de la referida corporación incluyen al Dr. Joaquín F. Rodríguez Ema; a los apelados, Dr. Martín M. Rodríguez Emma Travieso, Dr. José D. Riera Rodríguez, Dr. Luis Angel Rodríguez Emma Travieso, Dr. Manuel Rodríguez Emma Travieso, Dr. José Riera Rodríguez y la Sa. Marta Rodríguez de Riera.

Durante los años 1983 al 1985, el Dr. J. Rodríguez se desempeñó como Jefe del Departamento de Terapia Respiratoria del Hospital y prestó servicios profesionales de terapia respiratoria. Por razón de que el Hospital era proveedor de servicios a pacientes de Medicare y COSVI era su intermediario fiscal, los proveedores de servicios dentro del Hospital, es decir, los distintos departamentos, facturaban sus costos directamente al intermediario de Medicare, COSVI.

El 22 de abril de 1983, el Dr. J. Rodríguez presentó una demanda en cobro de dinero, daños y perjuicios y cumplimiento específico de contrato contra el Hospital y sus accionistas.

Durante el año 1984, la Ley de Medicare fue enmendada y como resultado de esa enmienda los costos de los departamentos del Hospital eran facturados por el Hospital propiamente para su reembolso por COSVI.

El 15 de julio de 1986, el Dr. J. Rodríguez presentó una segunda demanda contra varios de los accionistas del Hospital y como resultado de ello, el 16 de diciembre de 1986, los doctores Martín

Rodríguez Emma y José D. Riera, entre otros, suscribieron un documento privado con el Dr. J. Rodríguez en el que éste acordaba desistir con perjuicio de ambas demandas instadas por él contra el Hospital y sus accionistas. El Tribunal de Primera Instancia consignó su aprobación al desistimiento con perjuicio de ambas acciones. ■

Entre los acuerdos plasmados en el documento se incluyó una estipulación en la que las partes reconocían que el Dr. J. Rodríguez había sometido unas facturas a Medicare, que las mismas estaban siendo auditadas y que posiblemente la auditoría se extendería al Hospital. Reconocían, además, que la cantidad que el Hospital pagaría al Dr. J. Rodríguez, si alguna, dependía de dicha auditoría y era posible también que en la misma, se determinara que no se le adeudaba cantidad alguna al Dr. J. Rodríguez.

A tenor con el referido acuerdo, el Hospital se comprometió a reembolsar al Dr. J. Rodríguez cualquier cantidad a la que tuviera derecho luego de concluida la auditoría. ■

El 13 de octubre de 1987, la Cooperativa de Seguros de Vida (COSVI) expidió un cheque por la cantidad de $206,500.00 a favor del Hospital por concepto de reembolso para servicios prestados de terapia respiratoria para el período comprendido entre el 31 de diciembre de 1984 hasta el 31 de diciembre de 1985, sin especificar las cantidades correspondientes al Hospital y al Dr. J. Rodríguez, respectivamente. Por esa razón, el Hospital devolvió el referido cheque á COSVI y solicitó una determinación de las cantidades que se estaban reembolsando a una y otra parte.

Posteriormente, mientras los fondos estaban en posesión de COSVI, el Servicio de Rentas Internas Federal embargó los fondos para satisfacer una deuda contributiva del Hospital.

El 23 de diciembre de 1987, el Dr. J. Rodríguez, en conjunto con los demás accionistas del Hospital Monteflores, Inc. acordaron unánimemente liquidar dicha corporación. En el acuerdo suscrito por las partes para la liquidación de la corporación se estableció una prelación para el pago de las obligaciones de la misma. Acordaron, además, que después de pagadas todas las obligaciones de la corporación, se establecería un fondo de reserva cuya vigencia sería por un período de tres años y que se utilizaría *"para el pago de cualquier obligación contingente no reconocida por la corporación como deuda líquida y exigible". Luego de transcurridos los tres años, cualquier sobrante en dinero sería distribuido entre los accionistas en la proporción a las acciones que éstos poseyeran "al momento de su transferencia a la corporación".* ■

Se estableció el fondo de reserva por la cantidad de $500,000.00. Al vencer el término acordado de tres años para el pago de las obligaciones contingentes, los accionistas del Hospital decidieron mantener el fondo de reserva sujeto a la resolución de varios asuntos pendientes.

Después de concluida la venta del Hospital, los accionistas acordaron distribuir los activos entre ellos y la distribución se efectuó de la siguiente manera: el Dr. Martín Rodríguez-Ema Travieso recibió $509,757.28; el Dr. J. Rodríguez-Ema Travieso $558,220.12; el Dr. José D. Riera Rodríguez $295,713.07; el Dr. Luis Angel Rodríguez-Ema Travieso $262,955.78; Dr. Manuel Rodríguez-Ema Travieso $262,995.78 y Marta Rodríguez de Riera $2,243.65.

El 22 de abril de 1993, el Dr. J. Rodríguez presentó una demanda en el caso del epígrafe y solicitó el pago de $210,439.00 por concepto de servicios prestados en el departamento de terapia respiratoria. Luego de varios incidentes procesales, el 20 de febrero de 1997, el Dr. Rodríguez presentó una solicitud de sentencia sumaria la que acompañó con varios documentos. El 23 de abril de 1997, el Hospital y otros presentaron su Oposición a Solicitud de Sentencia Sumaria y Moción de Sentencia Sumaria. Considerados los escritos presentados, el tribunal *a quo* dictó sentencia mediante la cual denegó la solicitud de sentencia sumaria del Dr. J. Rodríguez y declaró con lugar la moción de sentencia sumaria presentada por el Hospital y otros.

Inconforme, el Dr. J. Rodríguez presentó una oportuna solicitud de apelación ante este foro. Por los fundamentos que pasamos a exponer procedemos a confirmar la sentencia apelada.

## II

En su escrito de apelación presentado ante este Tribunal el 14 de noviembre de 1997, el Dr. J. Rodríguez señala que erró el foro apelado al no determinar que la suma reclamada a la parte apelada es una que está vencida y es líquida y exigible y que erró además al determinar que el Dr. Martín Rodríguez Emma y el Dr. Riera, directores y accionistas del Hospital, no le son responsables en su carácter personal al apelante.

## III

El primer error señalado por el Dr. J. Rodríguez es referente a que erró el foro apelado al no determinar que la suma reclamada por él está vencida y es líquida y exigible. No le asiste la razón al Dr. J. Rodríguez.

La transacción es un contrato por el cual las partes, mediante recíprocas concesiones, evitan la provocación de un pleito o ponen fin al que había comenzado. Artículo 1709 del Código Civil, 31 L.P.R.A. sec. 4821.

En *Neca Mortgage Corp. v. A & W Developers S.E.* \_\_\_ D.P.R. \_\_\_ (1995), **95 J.T.S. 10**, a la pág.604, el Tribunal Supremo expresó que:

*"Como todo contrato, el contrato de transacción tiene los requisitos establecidos en el Artículo 1231 del Código Civil, 31 L.P.R.A. sec. 3391. Existe el consentimiento de los contratantes, ya que tiene que ser consensual; su objeto es la controversia entre las partes, pues sin ella no puede existir la transacción; y su causa consiste en la eliminación de la controversia mediante recíprocas concesiones, pues si bien tiene el propósito de desaparecer un conflicto pendiente, se diferencia de otras figuras contractuales que tienen la misma finalidad, en que ello se logra mediante renuncias mutuas."*

La razón de ser del contrato de transacción es evitar o dar por terminado un pleito; por ende, el *"juez viene obligado a tener en cuenta la decisión de las partes y a no contradecirla, aunque la crea injusta".* *Citibank v. Dependable Ins. Co. Inc.*, 121 D.P.R. 503, a la pág. 517.

Por su naturaleza, el contrato de transacción debe interpretarse de forma restrictiva. *Negrón Rivera y Bonilla, Ex parte,* 120 D.P.R. 61, a la pág. 74.

Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes. Artículo 1044, Código Civil, 31 L.P.R.A. sec. 2994. Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Art. 1233 del Código Civil, 31 L.P.R.A. sec. 3471.

Según se desprende de la prueba presentada ante el Tribunal de Primera Instancia, el acuerdo suscrito por las partes en el caso del epígrafe dispuso, entre otros, que las partes reconocían que Medicare estaría efectuando una auditoría del Dr. J. Rodríguez y que la misma podía hacerse extensiva al Hospital. [4] Además, expresaron que de los resultados de la auditoría dependía la determinación de qué cantidad, si alguna, le correspondía al Dr. J. Rodríguez, y en el mismo, éste reconoció la posibilidad de que no hubiera que reembolsarle nada a él y que por otro lado, cabía la posibilidad de que el Hospital tuviese que reembolsarle dinero a Medicare.

La transacción acordada el 16 de diciembre de 1986 finalizó dos casos judiciales instados por el Dr. J. Rodríguez contra el Hospital. Se desprende con claridad del referido acuerdo transaccional que el pago al Dr. J. Rodríguez estaba sujeto a contingencias, a saber, que se efectuara una auditoría y se estableciera la cantidad específica adeudada a éste, si alguna. Dicha determinación nunca se concretizó. Por el contrario, se estableció que una vez determinada la cantidad adeudada a éste, de haber alguna, el Hospital la pagaría. En ningún momento los accionistas en su calidad personal se obligaron a efectuar pago alguno al Dr. J. Rodríguez. Por otro lado, el Dr. J. Rodríguez no ha sometido prueba documental alguna que demuestre que la cantidad reclamada por él sea una vencida líquida y exigible.

En el Plan de Liquidación Corporativa se dispuso expresamente un orden de prelación para pagar

las deudas de la corporación y una vez éstas fueran pagadas, el balance de los activos y cuentas de reserva sería distribuido entre los accionistas de acuerdo a sus respectivas participaciones en acciones. El plan se cumplió según acordado y en la distribución el Dr. J. Rodríguez recibió un pago final de $558,220.12. En consecuencia, resolvemos que no erró el foro apelado al determinar que la suma reclamada por el Dr. J Rodríguez no era una vencida, líquida, o exigible. No se cometió el primer error señalado.

## IV

Como segundo error indica el Dr. J. Rodríguez que erró el tribunal sentenciador al determinar que el Dr. Martín Rodríguez y el Dr. José Dimas Riera no son responsables en su carácter personal por la reclamación instada por el Dr. J. Rodríguez. Tampoco le asiste la razón respecto a este error.

La personalidad jurídica de una corporación se extiende desde el otorgamiento y presentación del Certificado de Incorporación y su registro hasta su disolución. Sección 1103 de la Ley General de Corporaciones, 14 L.P.R.A. sec. 1103 Véase además, *Departamento de Asuntos del Consumidor v. Altura de Florida Development Corp.* ___ D.P.R. ___ (1993), **93 J.T.S. 33.**

Los tribunales no descartarán la personalidad jurídica de una corporación ni sujetarán el patrimonio de los accionistas para responder por las deudas y obligaciones de la corporación. Como excepción, en aquellos casos en los cuales la corporación es meramente un alter ego o conducto económico pasivo de sus únicos accionistas o en la medida en que sea necesario para evitar un fraude en la realización de un propósito ilegal, se podrá imponer responsabilidad personal a los accionistas por las obligaciones de la corporación. *Díaz Aponte v. Comunidad San José,* ___ D.P.R. ___ (1992), **92 J.T.S. 81**, a la pág. 9612; *Cruz v. Ramírez,* 75 D.P.R. 947 (1954), a la pág. 954.

El Tribunal Supremo ha expresado que toda corporación que se extinga por limitación propia o que de otro modo sea disuelta, continuará como cuerpo corporativo por un término de tres (3) años después de la extinción o disolución, para, entre otros fines, el de liquidar y terminar el negocio, deshacerse de los bienes y traspasarlos y dividir las acciones de capital, *Dorado Handcraft, Inc. v. Registrador,* 99 D.P.R. 21, a la pág. 24.

En *Fleming v. Toa Alta Develop. Corp.*, 96 D.P.R. 240 (1968), a la pág. 244, el Tribunal Supremo reconoció que la mera existencia de una deuda parcialmente insoluta o la insolvencia económica de una corporación no justifica como cuestión de derecho la imposición de responsabilidad a los accionistas.

Se desprende de la prueba en autos que en el Plan de Liquidación, los accionistas, el Dr. J. Rodríguez inclusive, acordaron la manera en que se pagarían las deudas y se liquidaría la referida corporación. Entre las deudas reconocidas no se incluyó la reclamación del Dr. J. Rodríguez ni se desprende de los autos que en momento alguno éste haya impugnado el Plan de Liquidación según suscrito por él y los demás accionistas. No se hizo mención alguna a que los accionistas o uno de ellos respondería por estas deudas o una de ellas.

El Dr. J. Rodríguez, mediante su aceptación de la suma de dinero producto de la venta de los activos del Hospital, consintió y se benefició del mismo. Es decir, por sus propios actos, aceptó que la Corporación, entiéndase el Hospital, y los accionistas no tenían deudas excepto las que expresamente estaban reconocidas. Al día de hoy la corporación Hospital Monteflores, Inc., se encuentra inactiva e insolvente. En consecuencia, resolvemos que no incidió el foro apelado al determinar que los Dres. Martín Rodríguez Emma y José Dimas Riera no le son responsables en su carácter personal al Dr. J. Rodríguez.

Por los fundamentos aquí señalados se confirma la sentencia apelada emitida por el Tribunal de Primera Instancia.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

1. Véase sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan, del 24 de diciembre de 1986, incluida en el Alegato del Apelante, Exhibit I, apéndice 49.

2. Véase Escrito de Apelación, Exhibit I, apéndice 37.

3. Véase *"Plan de Liquidación Corporativo Hospital Monteflores, Inc."* incluido como Exhibit 11, apéndice 130, del Alegato de Apelación.

4. Casos PE-85-1052 y 86-3687 (901) del Tribunal Superior de Puerto Rico, Sala de San Juan.