RAMÓN CRUZ ET AL., demandantes y apelantes, *v.* FRANK RAMÍREZ DE ARELLANO, JORGE JULIÁ PASARELL y MANUEL RIVERA HERNÁNDEZ, demandados y apelados.

Número 10850.

*Sometido:* 9 de julio de 1953. *Resuelto:* 12 de febrero de 1954.

948

*Guillermo Bauzá,* abogado de los apelantes; *Edelmiro Martínez Rivera,* abogado de los apelados Ramírez de Arellano y Rivera Hernández; *Gutiérrez, Saldaña & Sánchez, Sarah Torres Peralta* y *C. Morales, Jr.,* abogados del apelado Juliá Pasarell.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

El 20 de junio de 1950 los aquí apelantes radicaron en la sección de San Juan del anterior Tribunal de Distrito de Puerto Rico, una demanda sobre "cobro de sentencia" a los fines de hacer efectiva, contra los demandados individualmente, una sentencia sobre reclamación de salarios obtenida previamente por ellos, contra la corporación Ramírez, Rivera y Juliá, Inc. Se desestimó la demanda original, al igual que varias demandas enmendadas, por el fundamento de que ellas no alegaban hechos suficientes para justificar una reclamación válida. Finalmente se presentó una "Cuarta Demanda Enmendada." Un juez del Tribunal de San Juan entendió que tal demanda enmendada era suficiente y no procedía su desestimación, pero posteriormente otro juez, a petición de otros demandados, declaró con lugar una moción de desestimación, resolviendo que tal demanda enmendada era insuficiente. Los demandantes solicitaron que se dictase sentencia en su contra, y a favor de todos los demandados, y así se hizo. Los demandantes han apelado de esa sentencia para ante este

Tribunal y la controversia planteada se refiere, esencialmente, a la suficiencia de la "Cuarta Demanda Enmendada", a la cual nos referiremos como "la demanda." [1] Siendo la "cuarta demanda enmendada" completa de por sí, podemos juzgar su suficiencia sin necesidad de considerar las demandas anteriores ni las resoluciones con relación a las mismas. *Studio Carpenters Local Union* v. *Loew's, Inc.*, 182 F.2d 168, *certiorari* denegado en 340 U. S. 828, reconsideración denegada en 340 U. S. 885; *Erickson* v. *Slomer*, 94 F.2d 437; 71 C. J. Sec. 716, sección 321.

■■ A los fines de precisar nuestra actitud en cuanto a la suficiencia de demandas en general, conviene recordar que la suficiencia de una demanda debe considerarse a la luz de la situación más favorable al demandante y que una demanda no debe desestimarse a menos que aparezca con certeza que el demandante no tiene derecho a remedio alguno bajo cualquier situación de hechos que pudieran probarse como fundamento de la reclamación. *Cruz* v. *Ortiz*, 74 D.P.R. 321, 325, y casos allí citados. Bajo el sistema de las Reglas de Enjuiciamiento Civil, el propósito de la demanda en sí no es el de depurar ni precisar exactamente las cuestiones litigiosas, sino el de notificar a la parte demandada la esencia de la reclamación en su contra. *Komer* v. *Shipley*, 154 F.2d 861; *Moore* v. *Erie County Agr. Society*, 12 F.R.D. 6; Moore's *Federal Practice*, segunda edición, tomo 2, págs. 1648, 1649, sección 8.13. Una razón básica para justificar ese liberalismo en la interpretación de una demanda se refiere al hecho de que las partes tienen acceso a otros remedios, bajo las reglas, para comprobar con más exactitud el contenido, la naturaleza detallada y los contornos de la reclamación de la parte demandante siendo esos remedios el descubrimiento, los interrogatorios y la conferencia anterior al juicio. *Hickman* v. *Taylor*, 329 U. S. 495, 500, 501; 2 Moore, ob. cit., pág. 1652, sec. 813.

■■ En la demanda ante nos se alega esencialmente lo siguiente:

Los demandantes obtuvieron una sentencia a su favor contra la corporación Ramírez, Rivera y Juliá, Inc., por la suma de $1,560 en virtud de una demanda de reclamación de salarios. Los demandados eran los únicos accionistas y directores de esa corporación, la cual fué disuelta el 14 de septiembre de 1943, por consentimiento unánime de los demandados. La demanda que dió lugar a esa sentencia fué iniciada antes de disolverse la corporación. Se alega "que desde la fecha en que se arrendaron los servicios de los demandantes para la firma mencionada, los aquí demandados fueron los únicos que se beneficiaron de la labor realizada por los aquí demandantes," y que la corporación fué disuelta "con el único fin y propósito de defraudar el resultado de esta (sic) acción, ya que los demandantes han hecho gestiones para cobrar sus sentencias a la firma Ramírez, Rivera y Juliá, Inc., la que aparece insolvente, por lo que se les ha hecho imposible cobrar la misma y se han visto precisados a demandar ahora a los únicos dueños, directores e incorporadores de la referida corporación."

Se sigue alegando que "los demandados son los únicos deudores solidarios de la deuda a que se refiere esta acción y los demandados *han enajenado los bienes pertenecientes a la corporación* Ramírez, Rivera y Juliá, Inc., siendo ellos sus únicos directores, organizadores y únicos beneficiarios de los negocios de la referida corporación, *habiendo dejado la misma en estado de insolvencia* con el único y deliberado propósito de defraudar a los aquí demandantes, sus acreedores" y "para perjudicar principalmente a los demandantes"; que los demandados *contrajeron deudas en exceso del valor del* capital social y valor de las propiedades y créditos activos de la corporación Ramírez, Rivera y Juliá, Inc., *siendo los demandados los directores que autorizaron con sus votos a contraer* dichas deudas . . . . . *no teniendo activo suficiente la corporación mencionada para cubrir la adjudicación hecha en favor de los demandantes* . . . . "que al disolver los demandados la corpora-

ción mencionada no cumplieron con dejar cantidad alguna para cubrir el crédito que se intenta cobrar en esta acción." (Bastardillas nuestras.)

El propósito de la demanda es el de imponer responsabilidad individual a los demandados, como únicos accionistas, directores y liquidadores de una corporación disuelta, por las deudas previas de la corporación. Existen varias situaciones en que puede surgir tal responsabilidad individual y algunas de esas situaciones surgen adecuadamente de la demanda ante nos, por lo que ella es suficiente, debiendo revocarse por lo tanto la sentencia apelada.

Los artículos 28 y 29 de nuestra Ley de Corporaciones disponen lo siguiente:

"Artículo 28.—(Enmendado según la Ley núm. 24 de 1916, pág. 69.) *Los directores actuarán como síndicos durante la disolución.*—Mientras se procede a la disolución de una corporación en cualquiera forma acordada, los directores actuarán como síndicos liquidadores de la misma con amplios poderes para liquidar sus negocios, cobrar los débitos pendientes, enajenar y traspasar los bienes y dividir el dinero y demás propiedades entre los accionistas, después de satisfacer sus deudas, hasta donde alcanzaren dichos dinero y bienes. Tendrán poder para reunirse y resolver de acuerdo con el reglamento de la corporación y con el reglamento que acordare una mayoría de dichos síndicos al objeto de establecer plazos y condiciones para la venta de dichos bienes; podrán vender todos o cualquiera parte de ellos por dinero contante o en parte a plazos; o admitir hipotecas y bonos por parte del precio de compra de la totalidad o de cualquiera porción de dichos bienes. En caso de que haya una vacante o varias en la junta de directores de dicha corporación, ya exista en el momento de la disolución de la misma o que ocurra con posterioridad, los directores o el director que quede serán los síndicos o el síndico de la corporación, según fuere el caso, con plenos poderes para liquidar los negocios, cobrar los débitos pendientes, enajenar y traspasar los bienes y dividir el dinero y demás propiedades entre los accionistas, después de satisfacer las deudas, hasta donde permitan dicho dinero y bienes, y para hacer y ejecutar todos los demás actos que fueren necesarios para dar efecto

a las disposiciones de esta ley referentes a la liquidación de los negocios de dicha corporación y a la distribución de su activo.

"Artículo 29.—*Facultades y responsabilidades de los síndicos liquidadores.*—Los directores constituídos en síndicos, como queda dicho, tendrán poder para entablar demandas en cobro de dichas deudas y caudales, a nombre de *la corporación; y podrán ser demandados en juicio a nombre* de la misma, o en sus respectivos nombres como particulares, por las deudas de dicha corporación; *y serán mancomundada y separadamente responsables de dichas deudas hasta la cuantía de los fondos y bienes de la corporación que llegaren a su poder como tales síndicos.* (Bastardillas nuestras.)

Los acreedores de una corporación pueden demandar a los accionistas individualmente, o a los directores constituídos en síndicos liquidadores después de la disolución, con respecto a los bienes de la corporación que estén en poder de esos accionistas o directores–liquidadores, y si estos últimos disponen de, o enajenan, esos bienes en perjuicio de esos acreedores, ellos son responsables individualmente a esos acreedores. Fletcher, *Cyclopedia of the Law of Private Corporations,* Vol. 16, sec. 8161, pág. 922 *et seq; Koch* v. *United States,* 138 F.2d 850; *Hutton* v. *Commissioner of Internal Revenue,* 59 F.2d 66, especialmente si la corporación es insolvente después de su disolución. Cf. 13 Am. Jur. 991. La doctrina relevante es al efecto de que esos bienes deben ser considerados como existentes en beneficio, en parte, de los acreedores, y tales accionistas o liquidadores los reciben, en parte, en beneficio de los acreedores, y, por lo tanto ellos no pueden disponer de tales bienes en perjuicio de los acreedores. En cuanto a la doctrina del *"trust fund"* en cuanto a tales bienes, véase 13 Am. Jur. 1197.

En la demanda ante nos se alega que los demandados han enajenado los bienes de la corporación y han dejado la corporación en estado de insolvencia en perjuicio de los demandantes como acreedores, "y con el único y deliberado propósito de defraudar a los demandantes como acreedores."

Tal alegación es suficiente para dar lugar a responsabilidad individual de los demandados, en vista de las doctrinas arriba expuestas.

■ Estamos conscientes de que la corporación tiene una personalidad jurídica independiente de sus accionistas. Pero si la corporación es meramente un "alter ego" o conducto o instrumento económico pasivo ("business conduit") de sus únicos accionistas, recibiendo éstos exclusiva y personalmente los beneficios producidos por la gestión corporativa, entonces los accionistas serían individualmente responsables si ello es necesario para evitar un fraude o la realización de un propósito ilegal o para evitar una clara inequidad o mal ("wrong"). 1 Fletcher, ob. cit., sec. 41, págs. 136, 139 y casos allí citados; Bollantine *on Corporations*, sec. 123, pág. 294; *Minifie* v. *Rowley*, 202 Pac. 673; *Gross* v. *Cohen, et al*, 58 So.2d 703; *Loughran* v. *Reynolds*, 127 P.2d 586; *Davis* v. *Perry*, 120 Cal. App. 670, 8 P.2d 514; *Pickwick Corp.* v. *Welch*, 21 F.Supp. 664, 669; *Hollywood Cleaning and Pressing Co.* v. *Hollywood Laundry Service, Inc.*, 217 Cal. 124.

■ Dentro de la regla de interpretación liberal de las demandas como alegaciones, la situación arriba apuntada surge sustancialmente de las alegaciones de la demanda ante nos. Naturalmente, si en determinado caso se ha de prescindir de la ficción corporativa, ello depende de los hechos específicos de cada caso, a la luz de los principios generales arriba señalados, y ello debe ser resuelto por el tribunal de primera instancia al considerar la prueba. *Stark* v. *Coker*, 129 P.2d 390, 394. No estamos anticipando los méritos de este caso, ni resolviendo que éste sea un caso adecuado, de acuerdo con la realidad de los hechos, para justificar la aplicación de la doctrina del "alter ego", o "evitación de fraudes" arriba apuntada. Nos limitamos a resolver que la demanda, considerada aisladamente, contiene suficientes alegaciones para que el caso se dilucide luego en sus méritos concretos.

En la demanda se alega que los demandados, como directores de la corporación, contrajeron deudas en exceso del valor del capital social y de las propiedades y activo de la corporación; que ellos autorizaron con sus votos a contraer dichas deudas; que la corporación no tiene activo suficiente para cubrir la adjudicación hecha en favor de los demandantes, y que al disolver la corporación ellos no dejaron cantidad alguna para cubrir el crédito ( por sentencia) de los demandantes.

El artículo 35 de nuestra Ley de Corporaciones dispone lo siguiente:

"Artículo 35.—*Deudas de las corporaciones.*—Ninguna corporación podrá contraer deuda alguna por ningún concepto, que excediere del valor de su capital social ingresado en caja o del valor de sus propiedades y créditos activos. Los directores que autorizaren con sus votos a contraer dichas deudas serán responsables individual, mancomunada y solidariamente del importe de las mismas y dicha responsabilidad podrá exigirse mediante demanda entablada por cualquier acreedor que justificare haber sido judicialmente adjudicada su reclamación, y que el activo liquidado de la corporación no ha sido suficiente para cubrirla."

Las alegaciones de la demanda anteriormente señaladas caen dentro de la órbita de aplicación del artículo 35. Pero alegan los demandados–apelados que, bajo las disposiciones del artículo 35, los directores son responsables únicamente en cuanto a la deuda precisa y específica contraída en exceso del margen legal, o cuando ya se había llegado a ese exceso, o la que motivó el exceso en sí, no alegándose tal extremo en la demanda. Pero nosotros no interpretamos el artículo citado en esa forma. El artículo habla de "deuda alguna" que excediere del valor del capital social o de las propiedades o activo, y que los directores autorizantes serán responsables por "el importe de las mismas". El artículo no establece preferencia alguna, en cuanto a aptitud para responsabilizar a los directores, en favor de los acreedores posteriores al momento en que se llegó al exceso sobre el margen, sobre los acreedores

cuyas deudas surgieron antes de ese momento. Es cierto que el artículo 35 habla de la responsabilidad individual de los directores autorizantes en cuanto "al importe de las mismas", esto es, de las deudas que excedieren del valor indicado. Pero esa frase se refiere a la medida y alcance, monto o límites pecuniarios de la responsabilidad de ellos, y no debe ser interpretada como identificando ciertas deudas específicas, o como estableciendo preferencias entre acreedores.

El establecer tal preferencia en virtud de la interpretación restrictiva del artículo 35 por la que abogan los demandados, sería completamente injusto, inequitativo e impracticable. En 9 Corn. L. Q. 269, Harper, "Liability of Directors for Creating Excessive Indebtedness", se dice lo siguiente, a la pág. 279:

"Algunas cortes han adoptado el criterio de que los directores son (individualmente) responsables solamente a aquellos acreedores cuyas reclamaciones se refieran a las deudas contraídas en exceso . . . . Esa doctrina merece ser criticada. Si aquellas reclamaciones que constituyan el exceso son pagadas totalmente, tal pago reduce por tanto los fondos disponibles para el pago de todas las demás reclamaciones contra la corporación. Los acreedores existentes cuyas reclamaciones estén dentro de los límites permisibles sufren perjuicio en virtud de la aplicación de tal doctrina, hasta el punto de que el activo de la corporación haya sido reducido para pagar la deuda en exceso. En tal caso, el último acreedor está colocado en una mejor posición que el primero, que ha extendido crédito a la corporación cuando ella no tenía deudas. El último acreedor tendrá acceso tanto al activo corporativo como a los directores individualmente para el pago de su reclamación, mientras que el primer acreedor podría solamente tener acceso a los fondos de la corporación, cuyos fondos se estarían reduciendo constantemente con el pago de deudas contraídas en exceso. Sería entonces un caso en que, literalmente, el primero sería el último y el último sería el primero. Si fuese ello así, un director con conocimiento de la ley trataría de lograr que las deudas contraídas en exceso fuesen pagadas de los fondos corporativos antes del pago de las otras deudas. Tal interpretación del estatuto derrotaría su propósito. Por lo tanto,

otros tribunales han interpretado esos estatutos como creadores de responsabilidad en beneficio de todos los acreedores, incluyendo aquéllos cuyas reclamaciones estén dentro del límite estatutario, al igual que aquéllos que lo excedan. Esa, indudablemente, es la única regla que produciría un resultado equitativo."

Cuando el estatuto habla de "los acreedores de una corporación", o de "las deudas" o "reclamaciones", dentro del ámbito de aplicabilidad del artículo 35, se refiere a todos los acreedores, y no solamente a una parte de ellos, e incluye tanto a las reclamaciones en exceso como a las anteriores. *National Bank* v. *Dillingham*, 147 N. Y. 603, 609–610, 42 N. E. 338; *Hornor* v. *Henning*, 93 U. S. 228; *Whitney* v. *Pugh*, 58 App. Div. 316; *Moss* v. *Smith*, 155 Pac. 90.

Alegan los demandados apelados que, bajo el artículo 35, la responsabilidad individual de los directores por deudas excesivas no debe imponerse en cuanto a aquellas deudas contraídas en el curso ordinario de los negocios de la corporación y que en la demanda no se alega que la deuda contraída en este caso lo haya sido fuera del curso ordinario de los negocios corporativos (casos citados en Thompson, *Commentaries on the Law of Corporations*, tomo 1, pág. 266, sec. 218). Pero el artículo 35 no establece diferencia alguna entre las distintas clases de reclamaciones y deudas. Lo que se indica es que los directores no deben contraer, sobre el límite permisible, "deuda alguna por ningún concepto", esto es, la prohibición se extiende a toda clase de deudas, y no se limita a ningún tipo específico de deudas. Coincidimos con el criterio sentado en muchas jurisdicciones, al efecto de que la responsabilidad individual de los directores es imponible en cuanto a toda clase de deudas excesivas incurridas dentro o fuera del curso ordinario de los negocios. 13 Am. Jur. pág. 1003, sec. 1062; 12 Annotated Cases 807, donde se incluyen específicamente las deudas por jornales; L.R.A., 1915 D., pág. 1039 *et seq.*

Los apelados exponen que en la demanda no se alega que los directores demandados hayan consentido expresamente

en cuanto a la creación de la deuda envuelta en este caso, o en cuanto a que tal deuda estuviese fuera del límite permitido bajo el artículo 35. Para que los directores puedan ser responsables ellos deben prestar su consentimiento individual a la creación de la deuda. Pero tal consentimiento puede o no puede prestarse en una reunión formal de la junta de Directores (9 Corn. L. Q. 269, artículo citado). En la demanda se alega que los directores autorizaron con sus votos la creación de las deudas con relación a los demandantes. Esa alegación es suficiente, considerando especialmente el hecho de que la forma y manera en que se prestó el consentimiento es cuestión peculiarmente dentro del conocimiento personal de los demandados, y podría luego ser comprobada por los demandantes mediante los métodos procesales de descubrimiento y comprobación de hechos específicos y detalles. 4 *Cyclopedia of Federal Procedure*, pág. 218, sec. 14.171, tercera edición.

Podría alegarse que los pronunciamientos que hemos exteriorizado en esta opinión conllevan responsabilidades individuales demasiado gravosas para los directores, y que ella serviría de desaliento para futuros accionistas en cuanto a convertirse en directores. Pero nuestra opinión se basa en disposiciones específicas de la Ley de Corporaciones y se ajusta a las alegaciones presentadas en este caso especial, cuyas alegaciones tendrán luego que ser comprobadas. Nuestra opinión podría servir de estímulo a futuros directores para que actúen en forma cuidadosa, equitativa y de acuerdo con la ley.

El tribunal "a quo" resolvió que ha prescrito la reclamación de los demandantes, en virtud de las disposiciones del artículo 945 del Código de Comercio, que lee así:

"Artículo 945.—La acción contra los socios gerentes y administradores *de las compañías* o sociedades terminará a los cuatro años, a contar desde que por cualquier motivo cesaren en el ejercicio de la administración." (Bastardillas nuestras.)

Nuestro Código de Comercio fué adoptado del de España, y nuestro artículo 945 corresponde al 949 español. Esos ar-

tículos se refieren a "las compañías" enumeradas en y cubiertas por el Código de Comercio, tales como las compañías anónimas. Nuestra Ley de Corporaciones constituye un apéndice del Código de Comercio, pero no es parte integrante de ese Código. Al aprobar nosotros el Código de Comercio, con su artículo 945, se adoptó el término "compañías" utilizado en el 945, en su sentido y significación bajo el Código Clásico de Comercio, esto es, como refiriéndose a las "compañías" del Código de Comercio español. Las compañías anónimas son muy análogas a las corporaciones, pero no creemos que fuese la intención legislativa el que la Ley de Corporaciones sustituyera las disposiciones relativas a las compañías anónimas. y que las corporaciones se considerasen como compañías anónimas bajo las disposiciones generales del Código de Comercio. bajo la disposición general de prescripción contenida en el artículo 945, cuyas disposiciones, en su origen español, eran aplicables a compañías anónimas, y no a corporaciones, según ese concepto se estableció en la Ley de Corporaciones.

La diferencia entre "la compañía" del Código de Comercio y "la corporación" de la Ley de Corporaciones queda evidenciada por el hecho de que al aprobarse en el año 1911 la ley especial de corporaciones quedaron subsistentes en el Código de Comercio las disposiciones relativas a las compañías anónimas, las cuales siguieron coexistiendo con la Ley de Corporaciones hasta el año 1930, fecha en que los preceptos relativos a las compañías anónimas fueron derogados. Ley núm. 42 de 25 de abril de 1930 (pág. 321). No podemos concluir, por lo tanto, que las corporaciones han sustituído a las compañías anónimas en el ámbito de las disposiciones generales del Código de Comercio. En la ley citada del 1930 el legislador no indicó en forma alguna, que las disposiciones generales del Código de Comercio, que quedaban vigentes después de la ley del 1930 (tal como el artículo 945) y que antes eran aplicables a las compañías anónimas, se hiciesen extensivas a las corporaciones.

Es aplicable a este caso el artículo 1864 del Código Civil, que dispone un término prescriptivo de quince años para las acciones personales que no.tengan señalado término especial de prescripción. Por lo tanto, no ha prescrito la acción en este caso.

*Debe revocarse la sentencia apelada y devolverse el.caso a la Sala de San Juan del Tribunal Superior para que allí se sigan los procedimientos posteriores que no sean incompatibles con esta opinión.*

El Juez Presidente Sr. Snyder concurre en el resultado.

Los Jueces Asociados Sres. Sifre, Pérez Pimentel y Belaval no intervinieron.