Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XII

| WILMARIE FALCÓN RODRÍGUEZ y JOSEPH NEGRÓN MEDINA<br>Recurridos<br><br>v.<br><br>SERVICENTRO BUENA VISTA, INC., TOMÁS DURÁN GÓMEZ, TOMÁS DURÁN ROSARIO, ASEGURADORA ABC<br>Peticionarios | TA2025CE00258 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. BY2025CV02307<br><br>Sobre: Incumplimiento de Contrato de Servicios, Daños y Perjuicios |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto y el Juez Campos Pérez

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 3 de octubre de 2025.

Comparecen Servicentro Buena Vista, Inc., (Servicentro), Tomás Durán Gómez, (señor Durán Gómez) y Tomás Durán Rosario (señor Durán Rosario), (en conjunto, parte peticionaria), a través de recurso de *certiorari,* solicitando que revoquemos una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), el 8 de julio de 2025. Mediante su dictamen, el foro recurrido declaró *No Ha Lugar* sendas mociones de desestimación instadas por Servicentro, y los señores Durán Gómez y Durán Rosario.

Por los fundamentos que expondremos, hemos decidido expedir el auto de *certiorari* y *revocar* el dictamen recurrido.

**I. Resumen del tracto procesal**

El 7 de mayo de 2025, Wilmarie Falcón Rodríguez y Joseph Negrón Medina (parte recurrida o recurridos), presentaron una *Demanda* sobre

NÚMERO IDENTIFICADOR

SEN2025_____

daños y perjuicios e incumplimiento de contrato de servicios, contra Servicentro, el señor Durán Gómez y el señor Durán Rosario. En resumen, alegaron que son un matrimonio de empresarios dedicados al negocio de alimentos despachados en camiones (*food trucks*), de los que poseen varios, que ubican en distintos municipios. Adujeron que, el 14 de marzo de 2024, uno de tales *food truck* fue llevado al taller de mecánica de Servicentro para que le realizaran unas reparaciones. Sin embargo, a pesar de haber dado un depósito de cuatro mil dólares, dicho vehículo permanecía allí sin ser reparado, con comestibles y otro equipo relacionado a la operación del negocio. A tenor, solicitaron como remedio: 1) se ordenara a los peticionarios realizar de manera inmediata la reparación del vehículo o, en su defecto, que permitiese a los recurridos llevarlo a otro taller y que fueran los peticionarios quienes asumieran el costo; 2) $365,000.00 por concepto de daños por lucro cesante y pérdida de maquinaria e inventario; 3) $175,000.00 por concepto de angustias mentales y emocionales; y 4) $10,000.00 por concepto de gastos, costas y honorarios de abogados.

En respuesta, Servicentro presentó una moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, *infra*. Llevó a la atención del Tribunal que la parte recurrida había instado una querella ante el Departamento de Asuntos del Consumidor (DACo), previo a presentar la *Demanda*, por los mismos hechos y solicitando iguales remedios. Adujo que el DACo tenía jurisdicción sobre el asunto y los recurridos no debieron haber iniciado un proceso judicial, hasta agotar el remedio administrativo iniciado en la referida agencia.

En la misma fecha, de manera conjunta, el señor Durán Gómez y el señor Durán Rosario, también presentaron una moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, *infra*. Adujeron haber sido demandados en su carácter de secretario y tesorero

de la Corporación Servicentro, respectivamente, a pesar de dicha corporación ser una entidad jurídica separada e independiente de sus accionistas. Advirtieron que en la *Demanda* no se alegaron hechos específicos de ilegalidad o confusión de personalidad jurídica que permitiera descorrer el velo corporativo que existía entre la corporación y sus oficiales o accionistas. Añadieron, que en las referidas alegaciones no se exponía una reclamación que justificara la concesión de un remedio en su carácter individual o personal, pues estas aludían a obligaciones de la corporación. Por último, llamaron la atención al hecho de que la *Querella* presentada ante el DACo fue dirigida exclusivamente contra la corporación.

Ante lo cual, la parte recurrida presentó escrito en *Oposición* a la moción de desestimación tanto de Servicentro, como de los señores Durán Gómez y Durán Rosario. En lo referente a la moción de desestimación instada por Servicentro, reaccionó afirmando que lo planteado en la *Demanda* no era de la jurisdicción ni de la competencia del DACo, por cuanto el *food truck* no era un vehículo de transporte, sino la herramienta de trabajo para generar ingresos. Bajo el mismo razonamiento, adujo que la jurisdicción del DACo se limitaba a la Ley de Garantías de Vehículos de Motor, Ley Núm. 7-1979, cuya aplicación refiere a concesionarios, fabricantes y manufactureros de automóviles, no a un negocio dedicado a la reparación de vehículos de motor. Además, esgrimió un inminente daño irreparable, lo que tornaba en innecesario agotar la vía administrativa.

Por otra parte, en lo concerniente a la moción de desestimación radicada por los señores Durán Gómez y Durán Rosario, los recurridos arguyeron que, por virtud de la Ley Núm. 40 de 25 de mayo de 1972, según enmendada, mejor conocida como la *Ley de la Junta Examinadora de Técnicos y Mecánicos Automotrices de Puerto Rico*, estos respondían en

su capacidad personal, como técnicos automotrices licenciados por el Estado. Adujeron, por primera vez, que los peticionarios estaban utilizando el velo corporativo como subterfugio para evadir su responsabilidad personal por la falta de diligencia en su trabajo, de acuerdo con los estándares de su profesión como mecánicos automotrices.

Luego de la presentación de las mociones descritas, los recurridos instaron un escrito ante el TPI solicitando que emitiera una *Orden Provisional* de prohibición de enajenación de Servicentro.

A su vez, los peticionarios presentaron *Escrito en Oposición a Solicitud de Remedio Provisional y Reconsideración*. En lo pertinente, llevaron a la atención del Tribunal que el señor Durán Rosario y su esposa habían radicado un proceso de Quiebra bajo el Capítulo 13 del Código de Quiebras de los Estados Unidos, caso número 23-03501-ESL-13, por lo que procedía la paralización de todos los procesos en su contra.

A fin de cuentas, como ya dijimos, el foro recurrido emitió la Orden cuya revocación solicitan los peticionarios, denegando las mociones de desestimación presentadas.

En desacuerdo, los peticionarios acuden ante nosotros, señalando la comisión de los siguientes errores:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA DESESTIMACIÓN DE LA DEMANDA RECONOCIENDO LA JURISDICCIÓN PRIMARIA DEL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR.

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA DESESTIMACIÓN DE LA DEMANDA EN CUANTO A LA ACCIÓN DIRECTA CONTRA LOS OFICIALES Y EL ACCIONISTA DE LA CORPORACIÓN BUENA VISTA, INC. TOMÁS DURÁN GÓMEZ Y TOMÁS DURÁN ROSARIO.

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA A DENEGAR LA SOLICITUD DE RECONSIDERACIÓN DE DESESTIMAR LA DEMANDA EN FAVOR DE TOMÁS DURÁN ROSARIO, ANTE EL CASO DE QUIEBRAS QUE MANTIENE EN SU CARÁCTER INDIVIDUAL.

Por su parte, los recurridos presentaron *Recurso en Oposición a Expedición de Certiorari*. Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II. Exposición de Derecho

### A. Agotamiento de Remedios Administrativos

*La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* según enmendada por la Ley Núm. 38-2017, (LPAUG), 3 LPRA sec. 9601 *et seq.*, define el ámbito de la revisión judicial. Conforme a la Sección 4.2 de la LPAUG, 3 LPRA sec. 9672, solamente las órdenes o resoluciones finales dictadas por las agencias o funcionarios administrativos pueden ser revisadas judicialmente.

Nuestro Tribunal Supremo ha manifestado que la Sección citada limitó nuestra facultad de revisión judicial a decisiones que cumplieran con dos requisitos: (a) que fueran órdenes o resoluciones finales de la agencia, y (b) que la parte adversamente afectada hubiese **agotado todos los remedios provistos por la agencia administrativa**. *AAA v. UIA*, 199 DPR 638, 657 (2018) citando a *A.R.Pe. v. Coordinadora,* 165 DPR 850, 867 (2005).

Cónsono con lo anterior, se ha reconocido la **doctrina de agotamiento de remedios administrativos** como otra norma de **autolimitación judicial**. *Procuradora Paciente v. MCS,* 163 DPR 21, 35 (2004). (Énfasis provisto). Esta determina **"cuándo es el momento apropiado para que los tribunales intervengan en una controversia que [ha] sido previamente sometida ante la atención de una agencia administrativa"**. *Guzmán y otros v. E.L.A.*, 156 DPR 693, 712 (2002). (Énfasis y subrayado provistos). Esta norma, además, procura **"[evitar]** una intervención **judicial innecesaria y a destiempo** que tienda a interferir [con] el cauce y desenlace normal del procedimiento

administrativo". *Delgado Rodríguez v. Nazario de Ferrer*, 121 DPR 347, 355 (1988). (Énfasis provisto).

Para que se pueda invocar la norma de agotamiento de remedios administrativos, tiene que haber "una parte, que instó o tiene instada alguna acción ante una agencia u organismo administrativo, [que] recurre a algún tribunal **sin antes haber completado todo el trámite administrativo disponible**". *Mun. de Caguas v. AT & T*, 154 DPR 401, 408 (2001). (Énfasis provisto). En otras palabras, se invoca "para cuestionar la acción judicial de un litigante **que acudió originalmente a un procedimiento administrativo** o era parte de éste y **que recurrió luego al foro judicial, aunque aún tenía remedios administrativos disponibles"**. *Id.* (Énfasis provisto).

Si resultara aplicable la doctrina de agotamientos de remedios administrativos, **los tribunales deben abstenerse de intervenir hasta tanto la agencia haya atendido el asunto**. *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 851 (2008). (Énfasis provisto). De ello se sigue que los tribunales no deben intervenir en controversias que están pendientes ante la agencia y aún falta completar el trámite administrativo. *Mun de Caguas v. AT & T, supra*, págs. 408-409.

**B. El DACo**

El DACo fue creado por virtud de la Ley Núm. 5 de 23 de abril de 1973, 3 LPRA sec. 341 *et seq.*, según enmendada, mejor conocida como la *Ley Orgánica del Departamento de Asuntos del Consumidor*, con el propósito primordial de proteger, vindicar e implementar los intereses y derechos de los consumidores en Puerto Rico. Esta agencia fue dotada con amplias facultades para: dictar las acciones correctivas que fueren necesarias para cumplir con el mandato de su ley habilitadora de proteger a los consumidores; adjudicar las querellas que se traigan ante su consideración; conceder los remedios procedentes conforme a

derecho, incluidas las compensaciones económicas, si procedieran; establecer las reglas y normas necesarias para la conducción de los procedimientos administrativos e interponer cualesquiera remedios legales que fueran necesarios para hacer efectivos los propósitos de la ley, entre otros. Arts. 5, 8 y 10 de la Ley Orgánica del Departamento de Asuntos del Consumidor, 3 LPRA secs. 341 (d), (g) e (i); *Suárez Figueroa v. Sabanera Real, Inc.*, 173 DPR 694, 704 (2008); *Quiñones v. San Rafael Estates, S.E.*, 143 DPR 756, 765-767, 769 (1997).

En lo pertinente a la controversia ante nos, entre las facultades y deberes concedidos al Secretario del DACo se encuentra **"atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía"**. Art. 6 de la Ley Orgánica del Departamento de Asuntos del Consumidor, 3 LPRA sec. 341e.

### C. Personalidad Jurídica de las Corporaciones

El Art. 217(b) del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5862, dispone que la corporación es una persona jurídica. Se entiende que la corporación es la entidad que surge cuando una o más personas obtienen autorización del Estado para operar una empresa a la que se le reconoce una personalidad jurídica distinta y separada de la de sus dueños. Sus características principales son: (1) **personalidad jurídica propia**; (2) responsabilidad limitada; (3) gerencia centralizada; (4) existencia perpetua, y la (5) libre transferibilidad de intereses. (Énfasis provisto). C.E. Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo*, Hato Rey, Ed. Publicaciones Puertorriqueñas, 2016, pág. 45.

Según resulta patente, una de las características principales de la corporación es que cuenta con una personalidad jurídica distinta y separada de la de sus dueños. *Miramar Marine et al. v. Citi Walk et al.*, 198 DPR 684, 691 (2017); *Santiago et al. v. Rodríguez et al.*, 181 DPR 204

(2011). En consecuencia, la corporación tiene su propio patrimonio, distinto al patrimonio de sus accionistas, sean estos últimos personas naturales o jurídicas. *D.A.Co. v. Alturas Fl. Dev. Corp. y otro*, 132 DPR 905, 924 (1993); *Sucn. Santaella v. Srio. de Hacienda*, 96 DPR 442, 451 (1968).

La figura de la corporación facilita el desarrollo de empresas **porque se le reconoce una personalidad jurídica distinta a la de sus dueños o miembros**, quienes por lo general no responderán con sus bienes personales por los actos de la corporación, sino hasta el monto de su inversión. (Énfasis provisto). *Santiago et al. v. Rodríguez et al.*, *supra*, pág. 214.

A partir de la expedición del certificado de incorporación nace la entidad corporativa. Por tanto, **constituida la personalidad jurídica de la corporación, su existencia como ente jurídico es independiente de sus accionistas, directores y oficiales**. (Énfasis provisto). *Peguero y otros v. Hernández Pellot*, 139 DPR 487, 502 (1995). De esto se desprende que existan distinciones legales entre la corporación y las personas naturales que forman parte de ella. *Id.* Una vez reconocida la personalidad jurídica de una corporación, esta puede demandar y ser demandada bajo su nombre corporativo en cualquier tribunal y participar en cualquier procedimiento judicial, administrativo, de arbitraje o de cualquier otro género. Art. 2.02 de la Ley de Corporaciones, 14 LPRA sec. 3522 (b).

A modo de **excepción**, el Tribunal Supremo de Puerto Rico ha resuelto que se descartará la personalidad jurídica de una corporación y los accionistas responderán con su patrimonio en aquellos casos donde:

> … la corporación es meramente un "alter ego" o conducto o instrumento económico pasivo ("business conduit") de sus únicos accionistas, recibiendo éstos exclusiva y personalmente los beneficios producidos por la gestión corporativa [y] si ello es necesario para evitar un fraude o la realización de un propósito ilegal o para evitar una clara

inequidad o mal ("wrong"). *D.A.Co. v. Alturas Fl. Dev. Corp. y otro,* supra, pág. 925. (Citando a *Cruz v. Ramírez,* 75 DPR 947, 954 (1954)).

La parte que propone imponer responsabilidad individual a los accionistas tiene el peso de la prueba para demostrar que procede tal responsabilidad. *Id.,* pág. 926. En atención a ello, **no basta con que se realicen meras alegaciones de que la empresa es un *álter ego* de una persona**, sino que hay que presentar prueba que sustente que "la personalidad de la corporación y la del accionista no se mantuvieron adecuadamente separadas". *Id.*

### D. Quiebra

Nuestro Tribunal Supremo ha reconocido a la paralización automática o *stay* como una de las protecciones más básicas contenidas en el Código de Quiebras, para todo deudor que se acoja a la protección allí contenida. 11 USC secs. 101 *et seq.* Dicha paralización surge por virtud expresa de la Sección 362(a) del Código de Quiebras. La paralización automática impide el comienzo o la continuación de cualquier proceso judicial, administrativo, o de otra índole, que fue o pudo haber sido interpuesto en contra del deudor, o para ejercitar cualquier acción cuyo derecho nació antes de que se iniciara la quiebra. *Peerless Oil v. Hnos. Torres Pérez,* 186 DPR 239, 255 (2012); *Marrero Rosado v. Marrero Rosado,* 178 DPR 476 (2010).

Los efectos de la paralización automática se manifiestan **desde que se presenta la petición de quiebra, no requiere una notificación formal para que surta efecto, y se extiende hasta que se dicte sentencia final**. *Peerless Oil v. Hnos. Torres Pérez,* supra. (Énfasis provisto). Esta paralización impide que comience o continúe cualquier acción judicial o administrativa en contra del deudor existente, o que pudo tener su inicio con anterioridad a la petición de quiebra. A su vez, la paralización automática prohíbe toda acción judicial o administrativa

que se inicie o continúe contra el deudor, con el propósito de recuperar reclamaciones hechas previo a la petición de quiebra. *Id.*

### E. La moción de desestimación

La moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, es aquella que formula el demandado para solicitar que se desestime la demanda presentada en su contra. *González Méndez v. Acción Social de Puerto Rico,* 196 DPR 213, 235 (2016); *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008). Esta regla dispone que la parte demandada puede presentar una moción de desestimación en la que esgrima las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; y (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2; *López García v López García,* 200 DPR 50, 69 (2018).

Al evaluar una petición presentada al amparo de la Regla 10.2, *supra*, el foro primario tiene que tomar como ciertos todos los hechos bien alegados en la demanda**,** y considerarlos de la manera más favorable a la parte demandante. *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013); *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013). Así, para que una moción de desestimación pueda prosperar, se tiene que demostrar de forma certera que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, 2022 TSPR 104*; Rivera Sanfeliz v. Jta. Dir. FirstBanck*, 193 DPR 38, 49 (2015).

Ahora bien, ello solo aplicará a aquellos hechos alegados de forma *clara y concluyente, que de su faz no den margen a dudas. Cobra*

*Acquisitions, LLC v. Municipio de Yabucoa,* supra*; Rivera Sanfeliz v. Jta. Dir. FirstBanck*, supra.

**III. Aplicación del Derecho a los hechos**

a.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52, autoriza al Tribunal de Apelaciones a expedir el recurso de *certiorari* para, entre otros asuntos, revisar la denegatoria de una moción de carácter dispositivo. Precisamente, se nos ha solicitado la revisión de sendas denegatorias de peticiones de desestimación bajo la Regla 10.2 de Procedimiento Civil, *supra.* Siendo tales peticiones de carácter dispositivo, nos encontramos habilitados para intervenir con el dictamen recurrido.

b.

La parte peticionaria señala como primer error, que el TPI no reconociera la jurisdicción primaria del DACo sobre la causa de acción presentada en contra de Servicentro en dicho foro administrativo, previo a la presentación de la *Demanda.* Es decir, alza ante nosotros un planteamiento sobre agotamiento de remedios administrativos.

Sobre ello, surge del expediente ante nuestra consideración de manera diáfana, que la parte recurrida instó ante el DACo una *Querella* —número SAN-2025-0021383— en contra de Servicentro **antes** de presentar la *Demanda* sobre incumplimiento de contrato y daños y perjuicios.[1] En dicho proceso administrativo solicitó como remedio la devolución del vehículo de motor, y que se le indemnizara económicamente por el incumplimiento por el servicio no recibido.[2] Es decir, verificadas las alegaciones contenidas en la *Querella vis a vis* las

---

[1] Apéndice del recurso de *certiorari,* entrada número 14 del expediente electrónico del caso en SUMAC, Anejo 1.

[2] *Id.*

de la *Demanda,* resulta evidente que se trata de una misma causa de acción.

En la exposición de derecho subrayamos que la doctrina de agotamiento de remedios administrativos atiende una interrogante sobre cuál es el momento idóneo para que los tribunales ejerzan su intervención en un asunto que ha sido sometido con anterioridad ante una agencia administrativa. *Guzmán y otros v. E.L.A.*, 156 DPR 693, 712 (2002). El propósito de esta norma es "[evitar] una intervención judicial innecesaria y a destiempo que tienda a interferir [con] el cauce y desenlace normal del procedimiento administrativo". *Delgado Rodríguez v. Nazario de Ferrer*, supra, pág. 355.

No hay duda de que, luego de que la parte recurrida eligiera activar el trámite administrativo para la dilucidación de la causa de acción en contra de Servicentro, pretendió que el Tribunal también atendiera la misma controversia.[3] Es decir, la presentación de la *Demanda* interfirió con el cauce y desenlace normal del procedimiento administrativo iniciado.

Con todo, los recurridos sostienen que el DACo carece de jurisdicción para atender la controversia planteada, pues no se encuentra entre las incluidas en la *Ley de Garantías de Vehículos Motor, supra.* Sobre lo mismo, aduce que Servicentro no es un fabricante, manufacturero o concesionario a quien pueda aplicársele dicho estatuto.

No tiene razón, las facultades reconocidas al DACo para defender al consumidor son muy amplias, entre las cuales se incluyen la causa de acción por incumplimiento de contratos.

Con mayor precisión la *Ley Orgánica del Departamento de Asuntos del Consumidor* incluye entre sus facultades y deberes las de "atender,

---

[3] El hecho de que los recurridos presentaran la *Querella* ante el DACo por derecho propio, no tiene relevancia alguna respecto a la interrogante sobre el agotamiento de dicho trámite. Sobre ello, nuestro Tribunal Supremo ha zanjado que *el hecho de que las partes comparezcan por derecho propio, por sí solo, no justifica que se incumplan las reglas procesales. Febles v. Romar,* 159 DPR 714, 722 (2003).

investigar y resolver las quejas y querellas presentadas por los consumidores de **bienes y servicios adquiridos o recibidos del sector privado de la economía**".[4] Art. 6 de la Ley Orgánica del Departamento de Asuntos del Consumidor, 3 LPRA sec. 341e. (Énfasis provisto). Precisamente, las alegaciones incluidas en la Querella aluden al incumplimiento por Servicentro de un servicio contratado en el sector privado.

En definitiva, el TPI debió abstenerse de intervenir con la causa de acción instada contra Servicentro, hasta tanto el DACo dispusiera del asunto ante su atención.

c.

El segundo señalamiento de error se puede reducir a la afirmación de que en la *Demanda* presentada contra los señores Durán Gómez y Durán Rosario se confundió la personalidad jurídica de estos con la de la corporación Servicentro, sin ser alegada alguna situación que justificara descorrer el velo corporativo. Sobre lo mismo, los peticionarios especificaron que la única manera de lograr descorrer el velo corporativo, para que se justifique una causa de acción contra los accionistas u oficiales de una corporación, es alegar que la corporación: se utiliza para sancionar un fraude; promover una injusticia; evadir una obligación estatutaria; derrotar la política pública; justificar la inequidad o; defender el crimen. Sin embargo, en la *Demanda* no se alegó ninguna de tales circunstancias. Tiene razón.

Aun concediendo la lectura favorable a las alegaciones contenidas en la *Demanda* presentada contra los señores Durán Gómez y Durán Rosario que nos exige la jurisprudencia relativa la consideración de una

---

[4] Advertimos que nuestro pronunciamiento sobre la jurisdicción del DACo para atender la querella presentada en contra de Servicentro se limita a la facultad que su Ley Orgánica le concede para resolver reclamaciones sobre incumplimiento de contrato. Por tanto, **no** estamos atendiendo o adelantando opinión sobre cualquier otro planteamiento que pueda surgir sobre la jurisdicción del DACo en el proceso administrativo iniciado.

moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, resulta evidente que no hay asomo en estas de las causas que permitirían el descorrer el velo corporativo para exigir responsabilidad personal a los accionistas u oficiales de Servicentro. En este sentido, luego de que en la *Demanda* se identificara al señor Durán Rosario como presidente de dicha corporación, y al señor Durán Gómez como su secretario y tesorero, no se incluyó ni siquiera una mención sobre por qué cabría descorrer el velo corporativo, ni tampoco las causas para ello, según las identificamos en el párrafo que precede. Las alegaciones están huérfanas de imputaciones dirigidas a los referidos codemandados en su carácter personal, pues refieren al presunto incumplimiento de Servicentro con el servicio contratado.[5] Es en la oposición a moción de desestimación que los recurridos trataron de esgrimir por primera vez alegaciones contra los señores Durán Rosario y Durán Gómez en su carácter personal, pero ese no es el vehículo adecuado para enmendar las alegaciones.

Aunque resulte reiterativo, es tal vez la característica principal de la corporación que cuenta con una personalidad jurídica distinta y separada de la de sus dueños, accionistas u oficiales. *Miramar Marine et al. v. Citi Walk et al., supra,* pág. 691; *Santiago et al. v. Rodríguez et al.,* supra. Por consiguiente, la corporación tiene su propio patrimonio, distinto al de sus accionistas, sean estos últimos personas naturales o jurídicas. *D.A.Co. v. Alturas Fl. Dev. Corp. y otro,* supra, pág. 924; *Sucn. Santaella v. Srio. de Hacienda,* supra, pág. 451. Una vez se reconoce la personalidad jurídica de una corporación, esta puede demandar y ser demandada bajo su nombre corporativo en cualquier tribunal y participar en cualquier procedimiento judicial, administrativo, de

arbitraje o de cualquier otro género. Art. 2.02 de la Ley de Corporaciones, 14 LPRA sec. 3522 (b).

Ante la completa ausencia de alegaciones sobre descorrer el velo corporativo, y la responsabilidad personal de los referidos señores demandados, el tribunal *a quo* debió acoger la solicitud de desestimación de dicha causa de acción.

d.

Aunque lo anterior dispone de cualquier otro asunto pendiente, bien vale la pena pronunciarnos, de manera sucinta, sobre la petición de paralización de la causa de acción seguida en contra del señor Durán Rosario, al este haber iniciado un proceso bajo la Ley de Quiebra, *supra*.

Lo primero que cabe subrayar es que el señor Durán Rosario sí presentó evidencia para demostrar que inició el referido procedimiento de quiebras, a saber: la Notificación de Presentación de Petición de Quiebra.[6] Ello era evidencia suficiente en derecho para que, de inmediato, el TPI ordenara la paralización del pleito ante sí que se seguía en contra del señor Durán Rosario, hasta la conclusión del proceso de quiebras.

En la exposición de derecho dejamos constancia de los pronunciamientos de nuestro Tribunal Supremo sobre el efecto de la mera iniciación de un proceso de quiebras en los procesos judiciales y administrativos seguidos en contra de la parte que lo inicia. A ello refiere el concepto *stay* o paralización automática, que nuestro Tribunal Supremo ha caracterizado como que *impide el comienzo o la continuación de cualquier proceso judicial, administrativo, o de otra índole, que fue o pudo haber sido interpuesto en contra del deudor, o para ejercitar cualquier acción cuyo derecho nació antes de que se iniciara la quiebra. Peerless Oil v. Hnos. Torres Pérez, supra*, pág. 255; *Marrero Rosado v.*

---

[6] *Id.*, entrada número 26, Anejo 1.

*Marrero Rosado*, supra. Los efectos de la paralización automática se manifiestan desde que se presenta la petición de quiebra, **no requiere una notificación formal para que surta efecto, y se extiende hasta que se dicte sentencia final**. *Peerless Oil v. Hnos. Torres Pérez*, supra. (Énfasis provisto).

En consecuencia, de no haberse acogido la moción de desestimación en contra del señor Durán Rosario, de todos modos, el TPI venía obligado a ordenar la paralización de los procesos en su contra por causa del inicio del proceso de quiebras aludido.

**IV. Parte dispositiva**

Conforme lo explicado, *expedimos* el recurso de *certiorari* y *revocamos* los dictámenes recurridos. De conformidad con lo explicado: 1) desestimamos la causa de acción instada contra Servicentro, por falta de agotamiento de remedios administrativos, el TPI deberá ordenar que el asunto continúe su cause administrativo y; 2) acogemos la moción de desestimación presentada por los señores Durán Guzmán y Durán Rosario.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal