Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| MITSUBISHI MOTOR SALES OF CARIBBEAN, INC.<br><br>**Apelados**<br><br>v.<br><br>LUNOR, INC., ET AL.<br><br>**Apelantes** | **TA2025AP00547** | ***APELACIÓN***<br>Procedente del Tribunal de Primera Instancia, Sala Superior de **Mayagüez**<br><br>Caso Núm.:<br>**I DP2002-0332**<br><br>Sobre:<br><br>**Incumplimiento de transacciones garantizadas** |

Panel integrado por su presidente el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de enero de 2026.

Comparece ante nos José Julio Feliciano Prieto, Arelys María Concepción Lorenzo y la sociedad legal de bienes gananciales compuesta por ambos, Gustavo E. Guilbe Ortiz, Sonia E. Ortiz Ruiz y la sociedad legal de bienes gananciales compuesta por ambos o la parte apelante, mediante recurso de *"Apelación"*. La parte apelante solicita que revisemos la *"Sentencia"* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, en adelante, TPI-Mayagüez, el 9 de junio de 2025 y notificada el 16 de junio de 2025. Mediante la misma, el Foro Primario declaró *"Con Lugar"* la demanda enmendada y condenando solidariamente a la parte apelante a efectuar un pago, a favor de Mitsubishi Motor Sales of Caribbean, Inc., en adelante Mitsubishi o la parte apelada, por la suma principal de un millón novecientos sesenta y siete mil setecientos setenta dólares con cincuenta y tres centavos ($1,967,770.53), más intereses pactados sobre las obligaciones

principales por un millón seiscientos noventa y cuatro mil cuatrociocho veintiocho dólares con setenta y tres centavos ($1,694,428.73), para un total de tres millones seiscientos sesenta y dos mil con ciento noventa y nueve dólares con veintiséis centavos ($3,662,199.26). En adición, se le impuso a la parte apelante el pago de la suma de $50,000 por concepto de honorarios de abogado, a tenor con la Regla 44.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d).

Por los fundamentos que expondremos a continuación, *confirmamos* la determinación recurrida.

## I.

El 3 de octubre de 2002, Mitsubishi radicó una demanda contra Lunor, Inc. h/n/c Valentín Auto Centro y Hyundai de Hormigueros, en adelante, Lunor; así como contra varios de sus accionistas Norberto Seda Ortiz, Myrna Olmo Velázquez y la sociedad legal de bienes gananciales (SLG) compuesta por ambos; José Julio Feliciano Prieto, Arelys María Concepción Lorenzo y la SLG compuesta por ambos; Milton Sánchez Ramos, Luz S. Pellicier Rivera y la SLG compuesta por ambos; Gustavo E. Guilbe Ortiz, Sonia E. Ortiz Ruiz y la SLG compuesta por ambos; Francisco J. Curet Rivera, Blanca Rivera Morales y la SLG compuesta por ambos; así como contra varios demandados de nombre desconocido.[1] En la demanda, Mitsubishi formuló varias causas de acción, entre las que se incluyeron incumplimiento con transacciones garantizadas o (*sold out of trust),* distribución ilegal de dividendos y reducción ilegal de capital, acción para descorrer el velo corporativo, fraude, incumplimiento de contrato y reclamación de daños.

En lo pertinente a la acción para descorrer el velo corporativo, Mitsubishi alegó que los accionistas demandados utilizaron a Lunor

---

[1] Apéndice del recurso, anejo 5.

como su *alter ego* o como un mero conducto económico pasivo (*business conduit*), al no mantener la debida separación entre los asuntos personales de los accionistas y los de la corporación, beneficiándose personalmente de la gestión corporativa y amparándose indebidamente en la personalidad jurídica separada y en la limitación de responsabilidad. Por ello, Mitsubishi solicitó la imposición de responsabilidad personal y solidaria.[2]

El 17 de mayo de 2003, la parte apelante presentó su *Contestación a la Demanda*.[3] Tras varios años de trámite procesal y como resultado de procedimientos ante el Tribunal de Quiebras Federal, el 17 de agosto de 2010, Mitsubishi presentó una demanda enmendada, con el propósito de modificar las partes codemandadas, eliminando del pleito a Seda Ortiz, a su esposa y a la sociedad de bienes gananciales compuesta por ambos.[4] No obstante, la enmienda mantuvo intactas las causas de acción originalmente formuladas, incluyendo la reclamación para descorrer el velo corporativo. El 28 de septiembre de 2010, José Feliciano y Arelys María Concepción Lorenzo, así como la SLG compuesta por ambos, junto a Gustavo Guilbe y Sonia E. Ortiz Ruiz, así como la SLG compuesta por estos, presentaron su contestación a la demanda enmendada.[5]

Culminado el descubrimiento de prueba y luego de múltiples incidencias procesales, el 9 de febrero de 2015 el TPI-Mayagüez emitió una *Resolución*, mediante la cual determinó que los apelantes habían menospreciado el proceso de descubrimiento de prueba, actuando con falta de diligencia e incumplido reiteradamente con diversas órdenes del Tribunal. En consecuencia, conforme a la Regla 34.3(d) de las Reglas de Procedimiento Civil de Puerto Rico, 32 LPRA

---

[2] Apéndice del recurso, anejo 5, pág. 58.
[3] *Íd.*, anejo 6.
[4] *Íd.*, anejo 7.
[5] *Íd.*, anejo 8.

Ap. V, R. 34.3, el Foro Primario ordenó la eliminación de *todas las alegaciones de los apelantes a todos los efectos legales* y respecto a la totalidad de las controversias objeto de este pleito.[6]

Inconformes con la determinación de eliminar la totalidad de sus alegaciones, los apelantes recurrieron ante este Tribunal, el cual confirmó la actuación del TPI-Mayagüez.[7] En vista de ello, los apelantes acudieron ante nuestro más Alto Foro, para impugnar tanto la *Resolución* del 9 de febrero de 2015 como la determinación del Foro Apelativo que la confirmó. Como único señalamiento de error señalaron que:

> Erró el Tribunal de Apelaciones al confirmar la resolución emitida por el Tribunal de Primera Instancia y concluir que procedía imponer a las partes comparecientes la sanción de eliminar sus alegaciones, pese a que éstas no han incumplido con algún deber de preservar y/o producir evidencia y que la parte demandante no ha alegado hechos específicos que justifiquen descorrer el velo corporativo e imponer responsabilidad personal a los accionistas minoritarios comparecientes.[8]

Mediante *Sentencia* de 27 de septiembre de 2018, el Tribunal Supremo confirmó la determinación del Foro Primario, como la de esta Curia y concluyó que el TPI-Mayagüez no abusó de su discreción al imponer la sanción de eliminar las alegaciones de los apelantes, destacando el incumplimiento de los apelantes con el descubrimiento de prueba y el deber de preservar la evidencia.[9] Asimismo, señaló que los apelantes tenían conocimiento de las reclamaciones en su contra y, por ende, la obligación de custodiar los documentos pertinentes, particularmente los relacionados con sus finanzas. El Alto Foro destacó que, habiendo sido debidamente apercibidos, los apelantes estaban impedidos de impugnar la sanción impuesta, y recalcó que esta era necesaria para

---

[6] Apéndice del recurso, anejo 9.

[7] *Íd.*, anejo 1.

[8] *Íd.*, anejo 10, pág. 16.

[9] *Íd.*, anejo 10, pág. 29

salvaguardar la economía procesal y la facultad de los tribunales de instancia para manejar el trámite judicial.[10]

Reanudados los procedimientos ante el TPI-Mayagüez, surgieron discrepancias entre las partes sobre el efecto procesal de la eliminación de las alegaciones.[11] La parte apelada argumentó que, conforme a la *Resolución* del 9 de febrero de 2015, "los codemandados presentes estaban impedidos de presentar prueba a su favor".[12] Por otro lado, la parte apelante sostuvo que, "aunque se les eliminaron las alegaciones de la demanda de coparte y la contestación a la demanda, [...] se les dispuso en la misma resolución que se les permitiría presentar prueba en oposición a las reclamaciones de la demandante".[13]

A esos efectos, el 10 de febrero de 2020 el foro primario emitió una *Resolución*[14], en la cual determinó que los codemandados estaban impedidos de presentar prueba y defensas a su favor y que únicamente tendrían derecho a contrainterrogar a la parte demandante en la vista en rebeldía.[15]

Inconformes con dicha determinación, los apelantes acudieron nuevamente a este Foro Apelativo, reiterando los planteamientos esbozados en su moción de reconsideración ante el TPI-Mayagüez, en cuanto a la anotación de rebeldía y la presentación de la prueba. El 30 de septiembre de 2020, este Foro emitió una *Sentencia* en la cual revocó la *Resolución*, emitida por el TPI-Mayagüez.[16]

En consecuencia, Mitsubishi acudió ante el Tribunal Supremo solicitando la revisión de la determinación del Foro Intermedio. Evaluados los argumentos de ambas partes, nuestro más Alto Foro

---

[10] Apéndice del recurso, anejo 10, pág. 31.
[11] *Íd.*, anejo 11, pág. 4.
[12] *Íd.*, anejo 11, pág. 1.
[13] *Íd.*
[14] Enmendada *Nunc Pro Tunc* el 17 de marzo de 2020.
[15] Apéndice del recurso, anejo 11, pág. 5.
[16] *Íd.*, anejo 12. KCLE202000450.

emitió una *Opinión* el 12 de septiembre de 2023, *Mitsubishi Motor v. Lunor y Otros*, 212 DPR 807 (2023), en la cual revocó la decisión de este foro apelativo y restableció la determinación del TPI-Mayagüez, resolviendo *que los hechos bien alegados debían tenerse por admitidos, ciertos y probados, y que los demandados no podían presentar prueba en oposición a la demanda.*[17]

En lo pertinente, el Tribunal Supremo coincidió con la postura de Mitsubishi al concluir que permitir a los recurridos presentar prueba para refutar los méritos de la demanda resultaba incompatible con la orden de supresión total de las alegaciones, previamente confirmada mediante *Sentencia* del 2018. Por ello, determinó que los procedimientos debían continuar en rebeldía, conforme a lo resuelto en la *Resolución* del 10 de febrero del 2020.

En su Opinión, el Tribunal Supremo explicó que, como consecuencia de la eliminación de todas las alegaciones, las aseveraciones negadas por los recurridos debían tenerse por admitidas y las defensas afirmativas por no presentadas. *Mitsubishi Motor v. Lunor y Otros*, supra, pág. 834. Asimismo, expresó que **Mitsubishi podía descansar en los hechos bien alegados en la demanda, los cuales el tribunal debía considerar ciertos, admitidos y probados.** *Íd.,* pág. 835. (Énfasis Nuestro). Finalmente, concluyó que, en el juicio, los apelantes no podían presentar prueba en oposición a las alegaciones de la demanda presentada por Mitsubishi. *Íd.,* págs. 835-836.

Posteriormente, el 22 de julio de 2024 se presentó el *"Informe sobre Conferencia con Antelación a Juicio en Rebeldía".*[18] Conforme a lo pautado, el 1 de agosto de 2024, se celebró la Conferencia con Antelación a Juicio.[19] En este Informe, las partes estipularon toda

---

[17]Apéndice del recurso, anejo 1, págs. 6-7.
[18] *Íd.*, anejo 13.
[19]*Íd*, anejo 1, pág. 12.

la prueba de Misubishi, incluyendo los *"Security Agreements"*, marcadas como *Exihibits A-E,* y el desglose de la deuda en las dos hojas de Excel que forman parte de los *Exhibits F y G.*[20]

Más adelante, el 17 de marzo de 2025, los apelantes presentaron una moción, en la cual reconocieron que no tenían derecho a refutar los méritos de la demanda en la vista en rebeldía que estaba señalada para los días 7 y 8 de abril de 2025. No obstante, sostuvieron que tenían derecho a no admitir hechos incorrectamente alegados. En virtud de ello, solicitaron al TPI-Mayagüez que evaluara si los hechos materiales contenidos en la demanda estaban bien alegados, sí procedían como cuestión de derecho y si no contenían alegaciones concluyentes.[21]

El 25 de marzo de 2025, Mitsubishi presentó una *"Urgente Moción en Oposición a Moción de los Codemandados en Rebeldía",* en la cual argumentó que durante la vista de la Conferencia con Antelación al Juicio no se formuló alegación, argumento, ni planteamiento alguno por parte de los apelantes sobre la necesidad de evaluar si las alegaciones de la demanda constituían "materias bien alegadas", toda vez que dicho asunto había quedado resuelto en la *Opinión* del caso de *Mitsubishi Motor v. Lunor y Otros,* supra.[22]

Celebrada la *Conferencia con Antelación a Juicio en Rebeldía* y resueltas las mociones pertinentes, el 7 de abril de 2025 se celebró el juicio en su fondo. Durante la vista, Mitsubishi presentó como testigo a Madelene Nieves-Lebrón, en adelante Nieves-Lebrón, CPA y vicepresidenta de la corporación[23], quien declaró sobre la relación comercial entre Mitsubishi y Lunor, Inc., la deuda reclamada y los documentos que la sustentaban. La testigo explicó que la reclamación se fundamentaba en cinco (*5*) *Security Agreements,*

---

[20] Apéndice del recurso, anejo 13, pág. 10.
[21] *Íd.,* anejo 14.
[22] *Íd.,* anejo 15.
[23] *Íd.,* anejo 16, pág. 11-12.

identificados como *Exihibits A, B, C, D y E,* y detalló el método utilizado para calcular los balances pendientes, aclarando que los documentos reflejaban únicamente las cantidades adeudadas luego de acreditados los pagos parciales efectuados.[24] Nieves-Lebrón indicó que la suma reclamada correspondía al total de los balances no satisfechos de dichos acuerdos, y confirmó que el monto adeudado ascendía aproximadamente a un millón novecientos sesenta y siete mil setecientos setenta dólares con cincuenta y tres centavos ($1,967,770.53), cifra que resultó de restar los pagos efectuados a las cantidades originalmente garantizadas.[25]

Culminado el juicio, el foro primario concedió a las partes un término de veinte (20) días a las partes para someter sus respetivos memorandos de derecho. Así lo hicieron ambas partes mediante escritos presentados el 28 de abril de 2025.[26] El 9 de junio de 2025, el TPI-Mayagüez dictó la *"Sentencia",* en la cual declaró *"Con Lugar"* la demanda enmendada *imponiendo responsabilidad personal y solidaria a los demandados*, tras concluir que los hechos bien alegados y tenidos por probados constituían una base fáctica suficiente, robusta y coherente para descorrer el velo corporativo. El Foro de Instancia partió de la premisa procesal ya resuelta por el Tribunal Supremo de que, como consecuencia de la eliminación total de las alegaciones de los codemandados y la anotación de la rebeldía, **todas las alegaciones correctamente formuladas en la demanda enmendada debían tenerse por admitidas, ciertas y probadas**, excepto en lo relativo a la cuantía de los daños.[27] En consecuencia, el foro primario determinó que correspondía evaluar si dichas alegaciones, tal como fueron articuladas, contenían los elementos necesarios de las causas de acción reclamadas y

---

[24] Apéndice del recurso, anejo 16, págs. 23 y 69-74.
[25] *Íd.*, anejo 16, págs. 15.
[26] *Íd.*, anejo 17 y 18.
[27] *Íd.*, anejo 1, págs. 39.

justificaban los remedios solicitados, incluyendo el descorrer del velo corporativo.[28]

El 26 de junio de 2025, las partes apelantes presentaron una moción solicitando determinaciones de hechos adicionales y reconsideración.[29] Mitsubishi presentó su oposición el 3 de julio de 2025.[30] Sometida la moción, el TPI la denegó mediante *Resolución* emitida el 14 de octubre de 2025 y notificada al día siguiente.[31]

Inconforme con dicha determinación, el 10 de septiembre de 2025, la parte apelante presentó el recurso de *"Apelación"* que nos ocupa, en el cual formuló los siguientes señalamientos de error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LOS HECHOS BIEN ALEGADOS EN LA DEMANDA ENMENDADA, ESTIMADOS PROBADOS EN VIRTUD DE LA OPINIÓN MAYORITARIA DEL TRIBUNAL SUPREMO DE PUERTO RICO, CONSTITUYEN LA PRUEBA ROBUSTA Y FUERTE REQUERIDA PARA DESCORRER EL VELO CORPORATIVO E IMPONER RESPONSABILIDAD PERSONAL Y SOLIDARIA A LOS APELANTES EN EL CASO DE AUTOS.

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE LOS APELANTES INCURRIERON EN TEMERIDAD MANIFIESTA A LO LARGO DEL PLEITO, "A TENOR CON LAS ACTUACIONES Y OMISIONES SEÑALAD[A]S EN LAS DETERMINACIONES DE HECHO[S], PARTICULARMENTE, PERO SIN LIMITARSE, A LA DETERMINACIÓN DE HECHOS NÚMERO 47, IMPONIENDO UNA NUEVA SANCIÓN A DICHAS PARTES POR EVENTOS POR LOS CUALES FUERON SANCIONADAS, Y CASTIGÁNDOLES POR PRESENTAR ARGUMENTOS QUE, LEJOS DE SER FRÍVOLOS, FUERON ADOPTADOS POR ALGUNOS TRIBUNALES Y JUECES/ZAS EN DISTINTAS ETAPAS DEL CASO.

El 18 de diciembre de 2025, la parte apelada presentó su alegato en *"Oposición a Escrito de Apelación"*.

## II.

### A. Apelación Civil

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones,

---

[28] Apéndice del recurso, anejo 1, págs. 39. Véase, además, anejo 16, pág. 64-65.
[29] *Íd.*, anejo 2.
[30] *Íd.*, anejo 3.
[31] *Íd.*, anejo 4.

mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La *apelación* no es un recurso discrecional como en los casos de certiorari. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017).

Es harto conocido que, al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *Íd.*, pág. 771; *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

Sin embargo, la norma de deferencia esbozada encuentra su excepción y cede cuando la parte promovente demuestra que hubo un craso abuso de discreción, prejuicio, error manifiesto o

parcialidad. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 710 (2012).  Además, se requiere que nuestra intervención en esta etapa evite un perjuicio sustancial. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Por *discreción* se entiende el "tener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción". *García v. Asociación,* 165 DPR 311, 321 (2005), citando a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). No obstante, "el adecuado ejercicio de la discreción está inexorable e indefectiblemente atado al concepto de la razonabilidad". *Íd.* A esos efectos, el Tribunal Supremo de Puerto Rico ha indicado cuáles son situaciones que constituyen un abuso de discreción, a saber:

[C]uando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos. *Ramírez v. Policía de P.R.*, 158 DPR 320, 340-341 (2002), citando a *Pueblo v. Ortega Santiago*, supra, págs. 211-212. Así, pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho. *Rivera et al. v. Arcos Dorados et al.*, supra.

### B. Velo Corporativo

Es sabido que, la Ley General de Corporaciones se rige por los asuntos relativos a la "existencia y vida jurídica de las corporaciones privadas". *Eagle Security Police, Inc. v. Dorado*, 211 DPR 70, 85 (2023); *Dorado del Mar v. Weber, et al.,* 203 DPR 31, 45

(2019). Precisamente, las corporaciones se caracterizan por poseer una personalidad jurídica distinta y separada de sus inversionistas. *Eagle Security Police, Inc. v. Dorado, supra*, pág. 86; C. Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo*, 2da ed. rev., Editorial AlmaForte, Ed., 2018, pág. 104. Véase, además, *Miramar Marine v. Citi Walk*, 198 DPR 684, 691 (2017); *Librotex, Inc. v. A.A.A.*, 138 DPR 938, 947 (1995).

Es por eso que, estas entidades facilitan el desarrollo de las empresas ya que poseen personalidad jurídica propia, distinta e independiente a la de sus dueños o miembros, quienes por lo general no responderán con su patrimonio por los actos de la corporación, sino hasta el monto de su inversión. *Santiago et al. v. Rodríguez et al.*, 181 DPR 204, 214 (2011); C.E. Díaz Olivo, *Corporaciones*, San Juan, Publicaciones Puertorriqueñas, 2005, pág. 11. En este sentido, las corporaciones subsisten jurídicamente y ostentan la facultad de demandar y ser demandado bajo su nombre corporativo. Art. 2.02 de la Ley Núm. 64-2009, conocida como Ley de Corporaciones de 2009, 14 LPRA secs. 3501 et seq., en adelante Ley de Corporaciones. No obstante, por su naturaleza artificial, las corporaciones necesitan actuar a través de sus empleados o representantes. *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38, 50 (2015).

Como regla general, los accionistas o miembros no responden personalmente por las deudas de una entidad corporativa, excepto por actos propios. Ley de Corporaciones, *supra*, sec. 3502. Tal responsabilidad se circunscribe a la que estos hayan hecho al patrimonio de la corporación. *D.A.Co. v. Alturas Fl. Dev. Corp. y otro*, 132 DPR 905, 924 (1993).

Cónsono a lo anterior, nuestro más Alto Foro ha expresado que los tribunales podrán descartar la personalidad jurídica de la corporación cuando estas sean un *alter ego* o conducto económico

pasivo. *D.A.Co. v. Alturas Fl. Dev. Corp. y otro, supra,* pág. 925. Un *alter ego* es cuando una corporación es un conducto o "*Business Conduit*" de sus únicos accionistas, recibiendo éstos exclusiva y personalmente los beneficios producidos por la gestión corporativa". *Id.*, pág. 925, citando a *Cruz v. Ramírez,* 75 DPR 947, 754 (1954). En ese caso, "entonces los accionistas serían individualmente responsables si ello es necesario para evitar un fraude o la realización de un propósito ilegal o para evitar una clara inequidad o mal ("wrong")". *Id.*, pág. 925, citando a *Cruz v. Ramírez,* supra, pág. 754. Asimismo, la parte promovente de la reclamación del *velo corporativo* debe demostrar que no existe una separación adecuada entre la corporación y el accionista, y los hechos son tales que reconocer la personalidad jurídica sería igual a "sancionar un fraude, promover una injusticia, evadir una obligación estatutaria, derrotar la política pública, justificar la inequidad, proteger el fraude o defender el crimen". *Id.*, pág. 927, citando *Srio. D.A.C.O. v. Comunidad San José, Inc.*, 130 D.P.R. 782, 798 (1992). Por lo discutido anteriormente, la norma de *descorrer el velo corporativo* se rige por los siguientes principios fundamentales:

1. La aplicación de la doctrina depende de los hechos específicos de cada caso;
2. El ignorar la entidad corporativa constituye la excepción a la regla;
3. La corporación posee una personalidad jurídica separada y distinta de sus accionistas y la regla general es al efecto de que la existencia de la corporación, independientemente de sus accionistas no puede ser ignorada o descartada;
4. El fracaso de la corporación en su gestión económica, su administración deficiente, y la falla en observar las formalidades corporativas no son por sí mismos razón suficiente para desconocer la entidad;
5. El mero hecho de que una persona sea el único accionista de una corporación no conlleva de por sí la imposición de responsabilidad individual;
6. El peso de la prueba recae sobre la parte que busca descorrer el velo y propone la imposición de responsabilidad individual a los accionistas;
7. El peso de la prueba no se descarga con la mera alegación de que la empresa es un *alter ego* de los accionistas;
8. La prueba del que solicita el desconocimiento debe ser prueba fuerte y robusta.

9. Corresponde a la parte que propone el levantamiento del velo presentar prueba que demuestre que:

(i) existe tal identidad de interés y propiedad, que la corporación y la persona de sus accionistas se hallen confundidas; y

(ii) que los hechos sean de tal naturaleza que el sostener la ficción de la corporación derrota la política pública por equivaler a sancionar la utilización de la corporación para perpetuar un fraude o promover una injusticia o ilegalidad.

Díaz Olivo, Corporaciones, *Tratado de Derecho Corporativo, op. cit.*, págs. 119-120. Véase, además, *Santiago et al. v. Rodríguez et al.*, 181 DPR 204, 223 (2011); *South Porto Rico Sugar Corp. v. Junta Azucarera*, 88 DPR 43, 57 (1963).

Según esbozado anteriormente, si el demandante se limita a realizar alegaciones generales sobre que la Corporación es un *alter ego* o que sus accionistas utilizan a la entidad para cometer fraude o ilegalidad, nada de lo alegado podrá sustentar una reclamación de descorrer el velo corporativo. Si en efecto es así, se ha dejado de exponer en la demanda una reclamación que justifique la concesión de un remedio contra los accionistas y procede su desestimación. C. Díaz Olivo, *Mitos y Leyendas Acerca de la Doctrina de Descorrer el Velo Corporativo*, 73 Rev. Jur. U.P.R. 311, 387 (2004).

## C. Honorarios por Temeridad

La Regla 44.1 de Procedimiento Civil de 2009, supra, faculta a los tribunales a imponer el pago de una cuantía por concepto de honorarios de abogado en casos donde cualquiera de las partes o sus abogados hayan procedido con temeridad o frivolidad. *Slim v. El Conquistador Resort,* 2025 TSPR 133, 216 DPR ___ (2025). A falta de una definición de lo que constituye temeridad, el Tribunal Supremo de Puerto Rico ha dispuesto que "[l]a temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia". *Consejo Titulares v. MAPFRE,* 2024 TSPR 140, 215 DPR ___ (2025); *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).

La conducta que amerita la imposición de honorarios de abogado por temeridad es cualquiera que haga necesario un pleito que se pudo evitar o que ocasione gestiones evitables. *Asoc. Salud Primaria y otros v. ELA y otros*, 2025 TSPR 75, 216 DPR ___ (2025); *Martínez Maldonado v. CONSERVE*, 2024 TSPR 125, 215 DPR ___ (2024). De esta manera, en nuestro ordenamiento, los honorarios por temeridad se imponen como penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajos e inconveniencias de un pleito. *Asoc. Salud Primaria y otros v. ELA y otros*, supra; *SLG González-Figueroa v. SLG et al.,* 209 DPR 138, 148-149 (2022)*; Torres Montalvo v. Gobernador ELA,* 194 DPR 760, 778 (2016). De ahí que, como regla general, establecida la concurrencia de tal conducta, la condena de honorarios resulta ser imperativa. *Martínez Maldonado v. CONSERVE*, supra.

Aunque la penalidad por temeridad de una parte no está explícitamente consignada en las Reglas de Procedimiento Civil, *supra*, es a través de la imposición de honorarios de abogado, que el Tribunal ejerce esta facultad. Algunas instancias en las cuales el Tribunal Supremo de Puerto Rico ha reconocido que una parte actúa de forma temeraria se constituyen cuando:

> (1) contesta la demanda y niega responsabilidad total pero posteriormente la acepta,

> (2) se defiende injustificadamente de la acción,

> (3) cree que la cantidad reclamada es exagerada y es la única razón que tiene para oponerse a las peticiones del demandante, y no admite su responsabilidad pudiendo limitar la controversia a la fijación de la cuantía a ser concedida,

> (4) se arriesga a litigar un caso del que se desprende prima facie su responsabilidad, y

> (5) niega un hecho que le consta es cierto a quien hace la alegación.

*SLG González-Figueroa v. SLG et al.*, supra, pág. 150; *C.O.R.P. v. S.P.U.*, 181 DPR 299, 342 (2011); *Blas v. Hosp. Guadalupe*, 1146 DPR 267, 335-336 (1998).

El juzgador tendrá que adjudicar el monto correspondiente al grado de temeridad desplegado por el actor, ello mediante el ejercicio de su sano juicio. Es por ello que, "la determinación de si se ha incurrido o no en temeridad es una tarea que recae en la discreción sana del tribunal sentenciador y solo se intervendrá con ella en casos en los que se desprenda el abuso de tal facultad". *Slim v. El Conquistador Resort,* supra; *Martínez Maldonado v. CONSERVE,* supra. Véase, además, *Consejo Titulares v. MAPFRE,* supra; *SLG González-Figueroa v. SLG et al.*, supra, pág. 150; *Maderas Tratadas v. Sun Alliance et al,* 185 DPR 880, 926 (2012); *SLG Flores–Jiménez v. Colberg,* 173 DPR 843, 866 (2008).

### III.

Los apelantes recurren ante nos con dos (2) planteamientos de error. En el *primer señalamiento de error*, los apelantes sostienen que erró el TPI-Mayagüez al determinar que los hechos bien alegados en la demanda enmendada, tenidos por probados en virtud de la Opinión mayoritaria del Tribunal Supremo en el caso de *Mitsubishi Motor v. Lunor y Otros,* supra., constituyen la prueba robusta y fuerte requerida para descorrer el velo corporativo e imponer responsabilidad personal y solidaria. *No les asiste la razón.*

Como cuestión inicial, conviene reiterar que el presente caso se desarrolla en un contexto procesal excepcional, marcado por la eliminación total de las alegaciones de los apelantes como sanción procesal, determinación que fue confirmada de forma definitiva por el Tribunal Supremo. En consecuencia, y conforme a lo resuelto por dicho Foro en *Mitsubishi Motor v. Lunor y Otros,* supra., los hechos bien alegados en la demanda enmendada debían tenerse por admitidos, ciertos y probados, y los apelantes estaban impedidos de presentar prueba en oposición a los méritos de la reclamación. Así,

el foro primario no tenía ante sí una controversia probatoria tradicional, sino la obligación de evaluar si los hechos así admitidos satisfacían los elementos jurídicos de las causas de acción reclamadas y justificaban los remedios solicitados.

Del expediente surge que, en el *Informe sobre Conferencia con Antelación a Juicio en Rebeldía,* las partes estipularon la admisibilidad de la prueba documental que sería presentada en el juicio, incluyendo, entre otros, los cinco (5) *Security Agreements* identificados como *Exhibits A, B, C, D y E*, así como los documentos financieros y resúmenes de cuentas identificados como *Exhibits F y G.* Por ello, no existe controversia alguna en cuanto a la autenticidad, pertinencia o admisibilidad de dichos documentos, los cuales constituyeron parte integral del acervo probatorio evaluado por el foro primario.

Durante el juicio celebrado el 7 de abril de 2025, Mitsubishi presentó como testigo a Nieves-Lebrón, quien corroboró mediante su testimonio el contenido y alcance de los documentos estipulados. En particular, la testigo explicó la naturaleza de los *"Security Agreements"*, su relación con órdenes específicas de vehículos, la identificación de las unidades mediante *"VIN numbers"*, y el método utilizado para calcular los balances pendientes de pago. Asimismo, aclaró que los documentos reflejaban los montos adeudados luego de acreditados los pagos parciales efectuados, confirmando que subsistía una deuda significativa producto de transacciones garantizadas cuyo producto no fue remitido a Mitsubishi.

Contrario a lo que sostienen los apelantes, el foro de instancia no descansó en alegaciones vagas, conclusorias o meramente repetitivas para descorrer el velo corporativo, sino en hechos específicos corroborados por la prueba presentada. En particular, de la *"Sentencia"* recurrida surge que el foro primario examinó detenidamente las alegaciones bien formuladas y tenidas por

admitidas, las cuales describen un **patrón continuo de conducta mediante el cual los accionistas utilizaron a Lunor, Inc. como un instrumento para su beneficio personal, sin mantener una separación real entre la corporación y sus intereses individuales.** Entre otros hechos, se alegó y se tuvo por probado, que los apelantes **desviaron fondos corporativos, se apropiaron del producto de ventas garantizadas, realizaron distribuciones ilegales y reducciones indebidas de capital, y utilizaron la estructura corporativa para eludir obligaciones contractuales frente a Mitsubishi.**

Resulta igualmente pertinente considerar el contexto procesal del caso, particularmente el incumplimiento reiterado de los apelantes con el descubrimiento de prueba y su deber de preservar evidencia financiera pertinente, conducta que fue expresamente señalada y sancionada por el Foro de Instancia y Foro Apelativo, y validada por nuestro más Alto Foro Judicial. En este contexto, la exigencia de prueba "robusta y fuerte" no presupone necesariamente la presentación de evidencia testimonial o documental en un juicio adversativo ordinario, máxime cuando el propio comportamiento procesal de una parte ha dado lugar a la eliminación de sus alegaciones y a la admisión de los hechos bien formulados. Así, el análisis del foro primario se circunscribió, correctamente, a evaluar si el conjunto de hechos admitidos, corroborados por prueba documental estipulada y testimonio pericial, satisfacían el estándar jurídico aplicable para el descorrer del velo corporativo.

Por último, no puede perderse de vista que la revisión apelativa de este tipo de determinación exige deferencia al Foro Primario, salvo que se demuestre un abuso craso de discreción o un error manifiesto. Los apelantes no han logrado establecer que el TPI-Mayagüez haya incurrido en tal actuación. Por el contrario, la

"*Sentencia*" recurrida demuestra un análisis cuidadoso y razonado de las alegaciones admitidas, aplicado correctamente al marco jurídico pertinente.

En vista de lo anterior, *concluimos* que el Foro de Instancia no erró al determinar que los hechos bien alegados en la demanda enmendada, estimados probados conforme a derecho y corroborados por la prueba presentada en el juicio, constituyen la prueba robusta y fuerte requerida para descorrer el velo corporativo e imponer responsabilidad personal y solidaria a los apelantes.

En su *segundo señalamiento de error*, los apelantes alegan que erró el TPI-Mayagüez, al concluir que incurrieron en temeridad manifiesta a lo largo del pleito e imponerles el pago de honorarios de abogado. Sostienen que dicha determinación constituyó una penalidad indebida por eventos previamente sancionados y que, además, se les castigó por presentar planteamientos que no eran frívolos, toda vez que algunos de estos fueron acogidos por tribunales en distintas etapas del caso. *No les asiste la razón.*

Como es sabido, la determinación de si una parte ha incurrido en temeridad constituye una facultad discrecional del tribunal sentenciador, basada en la evaluación de la conducta procesal desplegada durante el curso del litigio. En ese contexto, el foro de instancia, por su inmediatez con los trámites y actuaciones de las partes, se encuentra en una posición privilegiada para valorar si una parte ha actuado con obstinación, contumacia o insistencia injustificada que afecte la buena marcha de los procedimientos y obligue a la otra parte a incurrir en gastos evitables.

Del examen del expediente surge que el Foro de Instancia no fundamentó su determinación de temeridad en un planteamiento aislado ni en la mera presentación de argumentos jurídicos posteriormente rechazados. Por el contrario, la imposición de honorarios de abogado descansó en una apreciación integral del

comportamiento litigioso de los apelantes a lo largo del pleito, **que inició desde el año 2002**, particularmente su incumplimiento reiterado con el descubrimiento de prueba, la falta de diligencia en la preservación de evidencia financiera pertinente y la resistencia injustificada a cumplir con órdenes judiciales, conductas que fueron debidamente consignadas en las determinaciones de hechos del foro primario.

Contrario a lo alegado por los apelantes, la imposición de honorarios por temeridad no constituyó una sanción duplicada por los mismos eventos que dieron lugar a la eliminación de sus alegaciones. Las sanciones procesales previamente impuestas respondieron a incumplimientos específicos relacionados con el manejo del descubrimiento de prueba, mientras que la determinación de temeridad obedeció a una evaluación distinta y más amplia del efecto acumulativo de su conducta procesal sobre la administración de la justicia y la economía procesal.

Tampoco resulta persuasivo el argumento de que la sanción fue improcedente porque algunos de los planteamientos de los apelantes fueron acogidos por tribunales en etapas intermedias del litigio. El hecho de que un foro haya, en determinado momento, adoptado provisionalmente una postura no impide que, una vez dicha controversia ha sido resuelta de manera definitiva por el Tribunal Supremo, la insistencia en continuar litigando asuntos ya adjudicados pueda ser considerada temeraria. Persistir en planteamientos incompatibles con determinaciones finales y firmes constituye una conducta que los tribunales están facultados a sancionar.

Del récord no se desprende que el TPI-Mayagüez haya actuado de forma arbitraria o irrazonable al imponer la sanción impugnada. Por el contrario, la *Sentencia* recurrida refleja que el foro primario ejerció su discreción de manera ponderada, identificó las

actuaciones que sustentaron su determinación y fijó una cuantía de honorarios acorde con el grado de temeridad observado.

En ausencia de un señalamiento concreto que evidencie abuso de discreción o error manifiesto, este Foro Apelativo no está llamado a sustituir su criterio por el del juzgador de instancia. Así, al no desprenderse del expediente que el Foro de Instancia haya actuado en contravención al estado de derecho vigente, procede sostener la determinación recurrida en cuanto a la imposición de honorarios de abogado por temeridad.

**IV.**

Por los fundamentos que anteceden, *confirmamos* el dictamen apelado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Sánchez Ramos disiente con las siguientes expresiones. La demanda no contiene alegaciones suficientes para sustentar la conclusión de que procede descorrer el velo corporativo. En vez, sobre este asunto, la demanda se limita a alegaciones genéricas, conclusorias y estereotipadas. Aun considerando que Mitsubishi no tuvo acceso a cierta información financiera que los demandados debieron preservar, la teoría de Mitsubishi es errónea, pues el simple hecho de que la corporación hubiese distribuido dividendos en abstracción de su deuda con Mitsubishi no es suficiente para concluir que reconocer la personalidad jurídica corporativa sería igual a "sancionar un fraude, promover una injusticia, evadir una obligación estatutaria, derrotar la política pública, justificar la inequidad, proteger el fraude o defender el crimen". *D.A.Co. v. Alturas Fl. Dev. Corp. y otro*, 132 DPR 905, 927 (1993) (citando *Srio. D.A.C.O. v. Comunidad San José, Inc.*, 130 DPR 782, 798 (1992)). De lo contrario, siempre que una corporación no administre sus bienes de la forma que un acreedor

particular estime es la más conveniente para sus intereses, procedería descorrer el velo corporativo, y claramente esa no es la norma. Es decir, no puede equipararse la frustración de los intereses particulares de un acreedor con la "injusticia", el "fraude" o el "crimen", que es lo que sí justifica, en situaciones verdaderamente excepcionales, que se descorra el velo corporativo. Nuestra conclusión se fortalece en este caso particular ante el hecho de que Mitsubishi, a pesar de exigirle una garantía personal a uno de los accionistas, optó por no exigirle lo mismo a los accionistas aquí apelantes. Finalmente, el récord de forma alguna justifica la altísima sanción por temeridad impuesta por el foro apelado ($50,000.00). Aunque los demandados incumplieron con sus obligaciones en cuanto al descubrimiento de prueba, ya dicha conducta había sido sancionada por el Tribunal Supremo a través de una anotación de rebeldía que el propio foro apelado había considerado y rechazado explícitamente (Apéndice a las págs. 82-83), por lo cual era improcedente que se emitiera una sanción adicional, mucho menos por una cuantía tan exageradamente alta.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones