ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CAMPO CARIBE LLC; ESTANCIA TWELVE TRUST<br><br>APELANTE<br><br>v.<br><br>SOLID CORE CONSTRUCTION, LLC; LUKAS MACNIAK; SOLID CORE ELECTRIC, LLC; SOLID CORE AIR CONSULTING, LLC<br><br>APELADA | TA2025AP00533 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2024CV05884<br><br>Sobre: Daños |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y el Juez Rivera Colón.[1]

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de febrero de 2026.

Comparecen Campo Caribe LLC y Estancia Twelve Trust (en adelante, "Campo Caribe" y "Estancia", y en conjunto, "apelantes"), y nos solicitan que revoquemos la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, foro primario o TPI), el 14 de agosto de 2025, notificada el mismo día. Mediante el referido dictamen, el foro primario desestimó con perjuicio la *Demanda* presentada por los apelantes y les impuso el pago de costas y honorarios de abogado por temeridad.

**I.**

El 26 de junio de 2024, Campo Caribe y Estancia presentaron una *Demanda* en contra Solid Core Construction LLC, Lukas Macniak, Solid Core Electric LLC y Solid Core Air Consulting LLC (en adelante, "Solid Core", "Sr. Macniak", "SC Electric" y "SC Air",

[1] Conforme a la Orden Administrativa OATA-2025-246, el Hon. Felipe Rivera Colón sustituye a la Hon. Glorianne M. Lotti Rodríguez.

respectivamente, y en conjunto, "apelados").[2] Según las alegaciones, Solid Core y Campo Caribe suscribieron un contrato en el que Solid Core se obligó a proveer servicios de construcción a Campo Caribe, quien a su vez se obligó a pagar la cantidad pactada en el contrato. Ante un alegado esquema de fraude en la facturación vinculada al proyecto de construcción contratado entre Campo Caribe y Solid Core, los apelantes presentaron la *Demanda* en cuestión reclamando daños y perjuicios causados por la alegada conducta delictiva, así como que el tribunal emitiera una sentencia declarando que los apelantes no adeudaban cantidad alguna a los apelados debido a que las facturas de cobro emitidas eran fraudulentas. Solicitaron, además, que se ordenara descorrer el velo corporativo de Solid Core para imponer responsabilidad directa y personal al Sr. Macniak y el resarcimiento en daños, en caso de que Solid Core llevara a cabo un embargo ilegal contra sus bienes.

El 5 de julio de 2024, los apelantes informaron haber diligenciado los emplazamientos a las partes apeladas el 2 de julio de 2024.[3] El 3 de septiembre de 2024, los apelados comparecieron mediante la presentación de una moción en la cual solicitaron al TPI que mantuviera en suspenso el término para presentar su alegación responsiva.[4] Estos fundamentaron su solicitud en que se encontraba pendiente ante este Honorable Tribunal de Apelaciones un recurso de revisión judicial, en el caso KLAN202400571, mediante el cual Campo Caribe acudió en apelación de una *Sentencia en Rebeldía* que fue dictada en el caso *Solid Core Construction LLC v. Campo Caribe LLC*, SJ2023CV11428 (en adelante, "Caso Original"), donde se le anotó la rebeldía a Campo Caribe. Alegaron que la determinación de este Tribunal en el caso

---

[2] Entrada #1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI.
[3] Entrada #4 del SUMAC del TPI.
[4] Entrada #11 del SUMAC del TPI.

KLAN202400571 podía disponer de la totalidad o gran parte de las alegaciones que Campo Caribe incluyó en la *Demanda* presentada, por lo que solicitaban al tribunal que mantuviera en suspenso el término para contestar, hasta que concluyera el trámite apelativo.

En vista de ello, el 4 de septiembre de 2024, los apelantes solicitaron el desglose de la solicitud de suspenso alegando que los apelados no presentaron fundamento legal alguno para sostener el suspenso y requirieron la anotación en rebeldía de los apelados por incumplir con el término provisto para alegar.[5] Evaluadas ambas mociones, el TPI las declaró "No Ha Lugar" mediante *Resolución y Orden* dictada y notificada el 1 de octubre de 2024.[6]

El 18 de octubre de 2024, los apelados presentaron una *Moción de Desestimación de Demanda* al amparo de la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5), en la cual alegaron que la *Demanda* constituía la reconvención compulsoria que Campo Caribe estuvo impedida de presentar en el Caso Original por habérsele anotado la rebeldía.[7] Argumentaron, además, que las alegaciones de fraude eran conclusorias e insuficientes como para descorrer el velo corporativo de Solid Core, así como que la causa de acción sobre daños y perjuicios por embargo ilegal era prematura. Igualmente, alegaron que procedía la desestimación en cuanto a Estancia por falta de legitimación activa y falta de relación contractual con Solid Core, así como que SC Air y SC Electric no podían responder al no ser partes del contrato suscrito entre Campo Caribe y Solid Core.

El 22 de noviembre de 2024, los apelantes presentaron su *Oposición a Moción de Desestimación*, en la cual argumentaron que la anotación de rebeldía en el Caso Original no impedía la

---

[5] Entrada #12 del SUMAC del TPI.
[6] Entrada #15 del SUMAC del TPI.
[7] Entrada #18 del SUMAC del TPI.

presentación de una demanda independiente; que no tenían la obligación, y que en derecho no procedía, presentar una reconvención compulsoria en el Caso Original porque las alegaciones de esta nueva reclamación iban dirigidas a Solid Core y terceros que no eran parte en ese primer pleito, por lo que no podían reconvenir contra ellos.[8] Igualmente, plantearon que la *Demanda* contenía alegaciones específicas y suficientes sobre las alegadas actuaciones fraudulentas en las cuales incurrió el Sr. Macniak, que a su vez sostenían descorrer el velo corporativo. A su vez, adujeron que las afiliadas SC Air y SC Electric podían responder por daño extracontractual a pesar de que no eran parte del contrato entre Campo Caribe y Solid Core y que Estancia poseía legitimación para reclamar los alegados daños y perjuicios extracontractuales. Asimismo, solicitaron el desistimiento en cuanto a la causa de acción de daños y perjuicios por embargo ilegal.

Luego, el 12 de diciembre de 2024, los apelados replicaron a la oposición de desestimación en la que reiteraron sus planteamientos iniciales e indicaron que, tomando como ciertas las alegaciones bien hechas, la *Demanda* dejaba de exponer una reclamación que justificara la concesión de un remedio.[9] Asimismo, el 21 de enero de 2025, los apelantes sometieron una *Dúplica a Réplica* reafirmando la suficiencia de sus alegaciones y la inexistencia de impedimento procesal para incoar el pleito. [10]

Tras varios incidentes procesales y luego de evaluar los escritos de ambas partes, el TPI notificó, el 14 de agosto de 2025, una *Sentencia* mediante la cual desestimó con perjuicio la *Demanda* al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra*.[11] El foro primario concluyó que las reclamaciones de los apelantes

---

[8] Entrada #25 del SUMAC del TPI.
[9] Entrada #31 del SUMAC del TPI.
[10] Entrada #37 del SUMAC del TPI.
[11] Entrada #52 del SUMAC del TPI.

constituían la reconvención compulsoria que Campo Caribe estuvo impedida de presentar en el Caso Original por habérsele anotado la rebeldía; que el haber incluido a entidades y una persona natural que no eran parte del Caso Original no implicaba automáticamente que no se fuera a interpretar como un subterfugio de los apelantes para evadir las consecuencias y finalidad de la anotación en rebeldía del Caso Original que le impidió presentar una reconvención compulsoria. A su vez, el TPI sostuvo que las alegaciones de fraude eran insuficientes y especulativas por lo que no procedía descorrer el velo corporativo, toda vez que no se alegaron hechos particulares y específicos para establecer que el Sr. Macniak utilizó el ente jurídico de Solid Core como instrumento para la comisión de algún fraude o ilegalidad.

En cuanto a Estancia, el foro primario determinó que carecía de legitimación activa y que no procedía la reclamación bajo el Artículo 1536 del Código Civil de Puerto Rico, 31 LPRA sec. 10801, sobre responsabilidad por culpa o negligencia. Además, concluyó que las entidades SC Electric y SC Air no podían ser demandadas al no ser parte del contrato. Por último, impuso a las apelantes el pago de $5,000 en honorarios de abogado por temeridad, al amparo de la Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(d).

En desacuerdo con el dictamen, el 29 de agosto de 2025, los apelantes presentaron una *Moción de Reconsideración*, en la que señalaron, entre otras cosas, que la *Sentencia* fue errada en cuanto a que no existe impedimento legal para que una parte anotada en rebeldía pueda presentar su reclamación en un pleito independiente.[12] Asimismo, reiteraron que su reclamo no era una reconvención compulsoria ya que incluía partes adicionales que no estaban presentes en el Caso Original. Además, argumentaron que

---

[12] Entrada #54 del SUMAC del TPI.

la apreciación del TPI sobre la insuficiencia de las alegaciones de fraude ignoró hechos detallados y documentos que evidencian de manera fehaciente las irregularidades alegadas. A su vez, adujeron que Estancia había sufrido daños económicos directos como consecuencia de las actuaciones fraudulentas de los apelados y que, por tanto, tenía legitimación activa para reclamar daños extracontractuales.

El 18 de septiembre de 2025, los apelados presentaron su *Oposición a Moción de Reconsideración*[13] sosteniendo que la reconsideración no aportaba argumentos nuevos y reiterando la corrección de la *Sentencia.* El 8 de octubre de 2025, las apelantes presentaron una *Réplica a Oposición a Moción de Reconsideración,* en cual insistieron en que el TPI había omitido evaluar alegaciones específicas de fraude y había aplicado incorrectamente los estándares de la Regla 10.2(5) de Procedimiento Civil, *supra.*[14]

El 10 de octubre de 2025, el foro primario mediante *Resolución* declaró "No Ha Lugar" la *Moción de Reconsideración.* [15]

Inconformes, el 10 de noviembre de 2025, los apelantes presentaron la *Apelación Civil* de epígrafe en la que señalan que el TPI cometió los siguientes errores:

A. **PRIMER ERROR: ERRÓ EL TPI AL DESESTIMAR CON PERJUICIO LA DEMANDA, PUES LAS ALEGACIONES, ACEPTADAS COMO CIERTAS, SON PLAUSIBLES Y SUFICIENTES EN DERECHO.**

B. **SEGUNDO ERROR: ERRÓ EL TPI AL NO PERMITIR QUE LOS DEMANDANTES ENMENDARAN LA DEMANDA, A PESAR DE QUE EL DERECHO A ENMENDAR DEBE PERMITIRSE LIBERALMENTE EN ESTA ETAPA PROCESAL.**

C. **TERCER ERROR: ERRÓ El TPI AL DETERMINAR QUE LA DEMANDA DE EPÍGRAFE CONSTITUYE UNA RECONVENCIÓN COMPULSORIA Y NO ASÍ UNA ACCIÓN INDEPENDIENTE PERMITIDA EN DERECHO.**

D. **CUARTO ERROR: ERRÓ EL TPI IMPONERLE SANCIONES A LOS DEMANDANTES POR EJERCER SU DERECHO A SER OIDOS.**

---

[13] Entrada #59 del SUMAC del TPI.
[14] Entrada #65 del SUMAC del TPI.
[15] Entrada #66 del SUMAC del TPI.

**II.**

**A. Reconvención Compulsoria**

Una parte dentro de un litigio podrá presentar una reclamación contra una parte adversa a través de la reconvención. Existen dos tipos de reconvenciones: las permisibles y las compulsorias. *Consejo Titulares v. Gómez Estremera et al.*, 184 DPR 407, 423 (2012); *S.L.G. Font Bardón v. Mini-Warehouse*, 179 DPR 322, 332 (2010). La razón de ser de este mecanismo procesal es evitar la multiplicidad de pleitos al disponer de un mecanismo para resolver todas las controversias comunes en un solo procedimiento. *Neca Mortg. Corp. v. A&W Dev. S.E.*, 137 DPR 860, 867 (1995).

La Regla 11.1 de Procedimiento Civil, 32 LPRA Ap. V, establece que la reconvención denominada como compulsoria contendrá cualquier reclamación contra la parte adversa, siempre que surja del acto, omisión, o del evento que motivó la demanda. La regla se dirige a fomentar la economía procesal. Como norma general, si la parte demandada no presenta una reconvención compulsoria, no podrá posteriormente presentar una acción independiente basada en el mismo evento que motivó la acción original. *Consejo de Titulares v. Gómez Estremera et al.*, supra, pág. 425; *Neca Mortg. Corp. v. A & W Dev. S.E.*, supra, pág. 867; *Sastre v. Cabrera*, 75 DPR 1, 3 (1953). El requerimiento tiene que ceñirse a reclamaciones entre las partes, pues no permite que se añadan terceros. Si no se formula una reconvención compulsoria a tiempo se entenderá que se renuncia a la causa de acción que la motiva. Es decir, le será aplicable el principio de cosa juzgada, al efecto de que será concluyente en relación con aquellos asuntos que pudieron haber sido planteados y no lo fueron. *Consejo Titulares v. Gómez Estremera et al.*, *supra,* pág. 425; *Sastre v. Cabrera*, *supra,* pág. 3.

El Tribunal Supremo de Puerto Rico ha establecido que la reconvención es compulsoria cuando:

> (1) "si existe una relación lógica entre la reclamación presentada en la demanda y la que es objeto de la reconvención"; (2) "cu[a]ndo los hechos esenciales de ambas reclamaciones están tan vinculados que la economía judicial exige que se ventilen en conjunto"; (3) "[s]i las cuestiones de hecho y de derecho entre ambas son las mismas"; (4) "si la doctrina de res judicata impediría una acción independiente", y (5) "si ambas reclamaciones surgen de la misma prueba y están vinculadas lógicamente". *Consejo Titulares v. Gómez Estremera et al., supra,* págs. 424-425 (citando a R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil,* 4ta ed., San Juan, Ed. LexisNexis de Puerto Rico, 2007, pág. 218).

### B. Descorrer el velo corporativo

Las corporaciones fueron creadas con el propósito de facilitar y promover las actividades comerciales. Su personalidad jurídica es distinta y separada de la de sus dueños y esa es una de sus características principales. *Miramar Marine v. Citi Walk et al.,* 198 DPR 684, 691 (2017). Las corporaciones no solo gozan de una personalidad propia a la de sus accionistas. Además, cuentan con un patrimonio distinto al de sus accionistas. Las corporaciones tienen autonomía patrimonial y responsabilidades separadas a las de sus accionistas. La responsabilidad de los accionistas por las deudas y obligaciones de la corporación generalmente está limitada al capital que aportaron a su patrimonio. *D.A.Co v. Alturas Fl. Dev. Corp. y otro,* 132 DPR 905, 924-925 (1993).

No obstante, en determinadas ocasiones, los oficiales, directores y accionistas responden por las deudas y obligaciones de la corporación. La norma que separa la personalidad jurídica de la corporación y los accionistas cede cuando promovería un fraude o una injusticia, evadir una obligación estatutaria, derrotar política pública, justificar la inequidad, o defender el crimen. *Srio. D.A.C.O. v. Comunidad San José, Inc.,* 130 DPR 782, 798 (1992).

Las excepciones antes señaladas implican descorrer el velo corporativo. Ahora bien, cuando se pretende descorrer el velo

corporativo se requiere presentar evidencia suficiente que justifique la imposición de responsabilidad más allá del ente corporativo. Íd., pág. 798. Los tribunales pueden descartar la personalidad jurídica de una corporación, si está siendo utilizada como un *alter ego* o conducto económico pasivo de sus accionistas. La ficción jurídica cede cuando existe tal identidad de interés y propiedad que ambas personalidades se confunden al extremo de que la corporación no es realmente una persona jurídica independiente y separada de sus accionistas. *D.A.Co v. Alturas Fl. Dev. Corp. y otro, supra*, pág. 925.

Así pues, los tribunales deberán escudriñar la prueba cautelosamente, en aquellos casos en los que el único accionista es una persona natural. Sin embargo, el mero hecho de que una persona sea el único accionista de una corporación no autoriza la imposición de responsabilidad individual. Íd., la pág. 926.

La aplicación de la doctrina de descorrer el velo corporativo dependerá de los hechos y las circunstancias específicas del caso particular a la luz de la prueba presentada. *Cruz v. Ramírez,* 75 DPR 947, 954 (1954). El peso de la prueba recae en la parte que propone la aplicación de la doctrina y corresponde al tribunal determinar si de acuerdo con dicha prueba procede descorrer el velo corporativo. Íd. No obstante, las meras alegaciones no son suficientes, porque se requiere prueba concreta que demuestre que la personalidad de la corporación y la del accionista no se mantuvieron adecuadamente separadas *D.A.Co v. Alturas Fl. Dev. Corp. y otro, supra,* págs. 925-927.

El Profesor Carlos E. Díaz Olivo ha resumido los principios que rigen la aplicación de la doctrina de descorrer el velo corporativo. C. Díaz Olivo, Corporaciones, *Tratado sobre Derecho Corporativo,* 2da ed, Ed. Alma Forte, 2018, págs. 120-121, 140-141.

Según el Prof. Díaz Olivo:

1. La aplicación de la doctrina depende de los hechos específicos de cada caso.

2. El ignorar la entidad corporativa es la excepción a la regla.

3. La corporación posee una personalidad jurídica separada y distinta de sus accionistas. La regla general es que la existencia de la corporación independientemente de sus accionistas no puede ser ignorada o descartada.

4. El fracaso de la corporación en su gestión económica, su administración deficiente, y la falla en observar las formalidades corporativas no son por sí mismos suficientes para desconocer la entidad.

5. El mero hecho de que una persona sea el único accionista de una corporación no conlleva de por sí la imposición de responsabilidad individual.

6. El peso de la prueba recae sobre la parte que busca descorrer el velo y propone la imposición de responsabilidad individual a los accionistas.

7. El peso de la prueba no se descarga con la mera alegación de que la empresa es un alter ego de los accionistas.

8. La prueba para descorrer el velo debe ser prueba fuerte y robusta.

9. El velo corporativo se descorrerá cuando se demuestra la congruencia de los siguientes elementos:

   a. La corporación se utiliza como un instrumento o alter ego de los accionistas, es decir existe tal identidad de interés y propiedad que la corporación y la persona de sus accionistas se hallen confundidos.

   b. Los accionistas cometen ciertos actos concretos de naturaleza fraudulenta o ilegal; que el sostener la ficción de la corporación derrota la política pública porque equivale a sancionar la utilización de la corporación para perpetuar un fraude o promover una injusticia o ilegalidad y;

   c. Existe una relación causal entre la utilización de la corporación como un instrumento o alter ego y el fraude o acto ilegal perpetuado.

### C. La doctrina de legitimación activa

Por otro lado, la justiciabilidad requiere la existencia de un caso o una controversia real para que los tribunales puedan ejercer válidamente el poder judicial. *Ramos, Méndez v. García García*, 203 DPR 379, 393-394 (2019); *Noriega v. Hernández Colón*, 135 DPR 406, 420 (1994). Los tribunales únicamente podemos evaluar los méritos de los casos que sean justiciables. *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727, 738 (2022); *Bathia Gautier v.*

*Gobernador*, 199 DPR 59, 68 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 931 (2011). Ahora bien, no se considera una controversia justiciable cuando:

> (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro. *Ramos, Méndez v. García García, supra*; *Bathia Gautier v. Gobernador, supra*, pág. 69; *Noriega v. Hernández Colón, supra*, pág. 421.

Por legitimación activa se entiende la capacidad de una parte para realizar con eficacia actos procesales como parte litigante y comparecer como demandante. Por tanto, esta requiere que la parte tenga una capacidad individualizada y concreta en la reclamación procesal. Ahora bien, en todo pleito, además de 'capacidad para demandar', la parte interesada deberá demostrar que tiene un interés legítimo. *Col. Ópticos de P.R. v. Vani Visual Center*, 124 DPR 559, 563 (1989); Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1986, Vol. I, pág. 13. Es un mecanismo de autolimitación y de prudencia judicial que persigue asegurar que el que presenta una acción en el tribunal tiene tal interés en el mismo que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia. *Col. Ópticos de P.R. v. Vani Visual Center, supra*, pág. 564; *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 413 (1982).

Ante la falta de una ley que expresamente confiera legitimación activa, una parte demandante la posee si cumple con los requisitos siguientes, que: (1) ha sufrido un daño claro y palpable; (2) el referido daño es real, inmediato y preciso, y no abstracto o hipotético; (3) existe conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción surge bajo el palio de la Constitución o de una ley. *Ramos Rivera v. García García,*

supra, pág. 395; *Col. Peritos Elec. v. A. E. E.,* 150 DPR 327, 331 (2000); *Hernández Torres v. Hernández Colón et al.,* 131 DPR 593, 599 (1996).

### D. Honorarios de Abogado

Los honorarios de abogado sancionan la temeridad de alguna de las partes en el pleito. La Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, es la vía procesal para imponer honorarios por temeridad. Los tribunales deberán imponer honorarios a cualquier parte o a su abogado, si han actuado temeraria o frívolamente. La cantidad impuesta será la que el tribunal entienda corresponde a la conducta cometida. Su imposición promueve disuadir la litigación frívola, compensar en lo posible los gastos de la parte que no ha sido temeraria y fomentar las transacciones de los pleitos. Su exigencia es imperativa, una vez se determina la temeridad.

El Tribunal Supremo de Puerto Rico ha resuelto que una parte es temeraria si: (1) insiste contumazmente en alegar algo sin prueba fehaciente que la apoye, (2) niega los hechos que le constan o son de fácil corroboración y (3) dilata los procedimientos judiciales para no responder por sus obligaciones. *SLG González-Figueroa v. SLG et al.,* 209 DPR 138, 147, 149 (2022). Conviene señalar que, la imposición de honorarios de abogado a la parte temeraria descansa en la sana discreción judicial. Íd., pág. 150. Los tribunales apelativos únicamente podrán variar la cantidad impuesta, si hubo abuso de discreción.

### III.

Los apelantes alegan que el TPI erró al desestimar la *Demanda,* cuando esta expone una reclamación que justifica la concesión de un remedio. Igualmente, sostienen que foro primario incidió al no permitirles enmendar la *Demanda,* a pesar de que el derecho a enmendar debe permitirse liberalmente en esta etapa procesal. A su vez, plantean que el mismo foro erró al determinar

que la *Demanda* constituye una reconvención compulsoria y no así una acción independiente permitida en derecho. Como último error, estos entienden que el TPI incidió al imponerles sanciones por ejercer su derecho a ser oídos.

Por su parte, los apelados sostienen que el foro primario resolvió correctamente al desestimar la *Demanda* presentada por los apelantes, ya que esta debió ser presentada mediante reconvención compulsoria en el Caso Original. No obstante, estos sostienen que los apelantes en el referido pleito se encuentran en rebeldía. De modo que, los apelados aducen que la *Demanda* de autos en contra de Solid Core Air, Solid Core Electric y el Sr. Macniak —quienes no son partes en el Caso Original— es más bien un subterfugio de las consecuencias de la anotación en rebeldía emitida en el Caso Original. Dado que, una parte que se le ha anotado la rebeldía está impedida de presentar una reconvención compulsoria.

Por encontrarse intrínsecamente relacionados, discutiremos de forma conjunta la improcedencia de los primeros tres señalamientos de error.

Según reseñamos, si una reconvención compulsoria no se presenta dentro del término establecido, se pierde el derecho a plantear cualquier causa de acción relacionada a los mismos hechos y partes. *Consejo Titulares v. Gómez Estremera et al.*, *supra,* pág. 425. De manera que, priva al demandado de posteriormente presentar una acción independiente basada en el mismo evento que motivó la acción original presentada por el demandante.

En un intento de hacer ver una reclamación distinta al Caso Original, los apelantes incluyeron como codemandante a Estancia, un fideicomiso que es el accionista mayoritario de Campo Caribe, bajo el pretexto de reclamar daños y perjuicios extracontractuales derivados de los hechos relacionados con el contrato entre Solid Core y Campo Caribe. Según se indica en la *Demanda* del epígrafe,

Estancia pagó a través de Campo Caribe, una gran parte de las facturas que Solid Core le cobró a Campo Caribe. No obstante, como bien se menciona en la misma *Demanda*, quienes únicamente firmaron el contrato titulado *Supply and Installation Agreement* fue Campo Caribe y Solid Core. Por tanto, son estos quien tienen derecho a presentar una reclamación, ya que son las partes que otorgaron el contrato. Así pues, no erró el TPI al resolver que Estancia no ostenta legitimación activa para presentar la *Demanda* de autos, cuando esta no tiene derecho a ningún reclamo.

Por otra parte, según la normativa antes expuesta, se permite aplicar la doctrina de descorrer el velo corporativo en aquellos casos donde existe fraude o cuando se desvirtúa la ficción corporativa para legalizar actos ilegales. C. Díaz Olivo, *op. cit.* Ahora bien, para probar tales alegaciones no es suficiente con alegar la inobservancia de las formalidades corporativas, o la utilización ilegítima de la figura de la corporación.

A esos efectos, las alegaciones presentadas por los apelantes para descorrer el velo corporativo de Solid Core y responsabilizar al Sr. Macniak en su capacidad personal son las siguientes:

> 105. Como demuestran los hechos antes mencionados el Sr. Macniak utilizó a Solid Core como su alter ego para provocar, entre otras cosas, que los Demandantes pagaran por servicios que no fueron realizados.
>
> 106. El Sr. Macniak ha estado involucrado en todos los negocios e incidentes importantes de esta reclamación.
>
> 107. El Sr. Macniak fue quien firmó el Contrato en representación de Solid Core.
>
> 108. El Sr. Macniak fue quien, con la intención de defraudar, se negó en primer lugar a proveer las facturas solicitadas por Campo Caribe para corroborar la procedencia de las solicitudes de pago.
>
> 109. El Sr. Macniak fue quien solicitó el pago por trabajo no realizado.
>
> 110. Además, el Sr. Macniak fue quien, luego de que Campo Caribe le remitiera la carta de terminación, proveyó las facturas alteradas, falsas y juramentadas como esfuerzo adicional para, y con la intención de, obtener un pago que no respondía a los servicios realmente prestados.

111. De ahí que el Sr. Macniak fue quien se lucró y pretendía seguir lucrándose del fraude que perpetró Solid Core contra los Demandantes.

112. Por información y creencia, todos los actos antes mencionados fueron impulsados, controlados, influenciados y provocados por el Sr. Macniak, ignorando las formalidades corporativas de Solid Core y cualquier deber ético comercial y legal aplicable.[16]

De lo anterior, resolvemos que no incidió el foro primario al resolver que las alegaciones presentadas por los apelantes no justifican que se descorra el velo corporativo de Solid Core. Esto, ya que los apelantes no pudieron establecer en sus alegaciones que el señor Macniak utilizó a Solid Core como un instrumento para cometer algún fraude o ilegalidad. Adviértase que, no basta con meramente alegar que se cometió un fraude y que el Sr. Macniak utilizó a Solid Core como su *alter ego* para que proceda descorrer el velo corporativo.

Así pues, analizado el Caso Original y la *Demanda* de autos, resolvemos que esta última es más bien la reconvención compulsoria que Campo Caribe no pudo presentar en el Caso Original debido a la anotación de su rebeldía. A todas luces lo que los apelantes están tratando es evitar las consecuencias legales derivadas de su rebeldía en el Caso Original. Inclusive, estos infructuosamente intentaron consolidar ambos casos, el cual el TPI rechazó hacer y un panel hermano de este Tribunal denegó atender mediante recurso de *certiorari.,* por lo que prevaleció el dictamen del foro primario. Permitir que se presente la misma controversia en un caso separado desvirtuaría el sentido de la figura de la rebeldía, convirtiéndola en un trámite sin importancia. Ante ello, resolvemos que no incidió el foro primario al desestimar la *Demanda* bajo el fundamento de que esta es en realidad una reconvención compulsoria.

---

[16] Entrada #1 del SUMAC del TPI.

Por último, los apelantes entienden que el foro primario incidió al imponerle honorarios de abogado por temeridad. Según el TPI, los apelantes han insistido en mantener injustificadamente el pleito contra las codemandadas Solid Core Air y Solid Core Electric, quienes no son parte del contrato entre Campo Caribe y Solid Core. Igualmente, los apelantes han promovido una teoría de desgarrar el velo corporativo de Solid Core para tratar de alcanzar el patrimonio personal del señor Macniak. De todo lo anterior, resolvemos que no abusó de su discreción el foro primario al entender que la conducta de los apelantes ha sido temeraria.

**IV.**

Por los fundamentos expuestos, confirmamos la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones